**J. H. HODGES and Brotherhood of Railroad Trainmen, Appellants,**

v.

**ATLANTIC COAST LINE RAILROAD COMPANY, Appellee.**

No. 22341.

United States Court of Appeals
Fifth Circuit.

July 13, 1966.

Rehearing Denied Sept. 1, 1966.

---

See also 5 Cir., 310 F.2d 438.

Sam D. Hewlett, Jr., Florence Hewlett Dendy, Atlanta, Ga., Wayland K. Sullivan, Cleveland, Ohio, Hewlett & Ward, Atlanta, Ga., for appellant J. H. Hodges.

Walter D. Sanders, Newnan, Ga., B. J. Mayer, LaGrange, Ga., John W. Weldon, Jacksonville, Fla., Lovejoy, Mayer & Allen, LaGrange, Ga., Edward A. Charron, Jacksonville, Fla., of counsel, for appellee.

Before GEWIN and BELL, Circuit Judges, and HUGHES, District Judge.

GEWIN, Circuit Judge:

This is an appeal by J. H. Hodges and Brotherhood of Railroad Trainmen (Union) from a summary judgment granted in favor of the Atlantic Coast Line Railroad (Railroad) by the United States District Court for the Northern District of Georgia. The case originated in a dispute between the employee Hodges, the employer Railroad and the employee's union. Although the procedural facets of the case are somewhat involved the facts themselves are relatively uncomplicated and may be stated in abridged form.

On the evening of January 6, 1955, Hodges, a trainman employed by the Railroad, was injured when a freight car wheel rolled over his left foot while in the performance of his duties in the railroad yards at Prairie Junction, Florida. Shortly thereafter, he instituted suit against the Railroad under the Federal Employers' Liability Act in the Superior Court of Fulton County, Georgia, for $75,000 in damages, claiming the Railroad's negligence caused his injuries. Included in his complaint in the state trial court is the following salient allegation:

"21. That petitioner by reason of the injuries which he has received is totally and permanently disabled from railroading and further was totally and permanently disabled from all work from January 6, 1955, the date of his injuries, through the date of filing this petition and said disability will continue in the future, the exact duration of which petitioner cannot now state."

In addition to the above allegation, Hodges also sought to recover loss of earnings and medical expenses past,

present and future. After a trial by jury, a verdict was returned in his favor for $22,005.28 in December, 1956. Judgment was entered thereon and payment in full was made by the Railroad on April 8, 1957. On April 29, 1957, Hodges was relieved of his rule book and switch-key, and his name was stricken from the Railroad's seniority list. Upon protesting his removal from the seniority roster, Hodges was advised that since he had established his inability to perform his job, the Railroad was under no further obligation to offer him employment consistent with the collective bargaining agreement.

At this point, the Union protested the Railroad's action and in September 1957, Hodges presented a report to the Railroad from a Tampa, Florida, physician in which the doctor advised that Hodges' foot was not then disabling and he could be employed at any work he desired to do. Hodges requested a like examination by a railroad physician, which was refused. The Union then interposed a request for a Board of three doctors to be impaneled to examine and pass upon his physical fitness. The Railroad again refused on the ground that where an employee alleges permanent disability, files suit, obtains and collects a judgment based on that contention, he has, by that fact, established that he is permanently disabled and therefore it was under no obligation to retain him in its service.

Thereafter, the Union presented Hodges' claim to the National Railroad Adjustment Board under the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq. The cornerstone of this claim was for reinstatement and pay for all time lost from September 30, 1957, to the date of restoration and was based on the contention that Hodges was wrongfully withheld from service in violation of the contract between the Railroad and the Union. The Railroad urged that Hodges was estopped to have his claim presented by the Union because of the position he assumed at the trial of the damage suit relative to his disability.

After an appropriate hearing the National Railroad Adjustment Board held in its Award No. 19287 that:

(1) the doctrine of estoppel applied only to the parties of record in the prior suit, and refused to apply estoppel because Hodges was not a party to the proceedings before the Board and the parties presently before it (the Union and the Railroad) were not the same as the parties to the damage suit;

(2) Hodges was wrongfully withheld from service, in violation of the Contract between the Union and the Railroad; and

(3) Hodges should be examined by three physicians and the decision of the majority would be binding on the parties, and if he was able to return to work on October 21, 1957, he should be reinstated with back pay from that date.

The Railroad refused to comply with the above Award and in July 1961, the present suit was filed to enforce it. The Railroad filed its answer contending: (1) that Hodges was estopped by his permanent disability suit in the state court from seeking reinstatement as an employee; and (2) that the Award of the NRAB was not final. Accompanying this answer, the Railroad filed a motion to dismiss on the finality issue. The motion was sustained by the District Court and the case was dismissed.

Thereupon, Hodges appealed to this Court, Hodges v. Atlantic Coast Line Railroad Co., 310 F.2d 438 (5 Cir., 1962), and we reversed and remanded for further proceedings to allow Hodges to have a physical examination by a board of physicians to ascertain his fitness for re-employment. In accordance with the mandate of this Court, the District Court remanded the case to the NRAB in order that the physical examination could be made, and for a determination by the Board of an appropriate award. An examination was made as directed and Hodges was found to have sufficiently recovered and able to return to work

as of January 29, 1963, as determined in Award No. 20389 of the NRAB.

The original complaint in the District Court was then amended to incorporate therein this second Award. Again, the Railroad filed responsive pleadings contending that Hodges was estopped as a matter of law from asserting any claim for reinstatement. The Railroad filed a Motion for Summary Judgment in its favor and the District Court granted the motion. The case thus comes to us a second time.

Succinctly stated, Hodges and the Union make the following two contentions on this appeal:

(1) The award ordering Hodges' reinstatement is final and binding and cannot be reviewed on its merits by the district court; the only part therein subject to review is the money award.

(2) Since the award is based on a breach of contract between the Union and the Railroad the doctrine of estoppel does not apply.

They rely heavily on the recent Supreme Court case of Gunther v. San Diego, Arizona Eastern R. Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), to sustain their position. A careful and cautious study of the record and briefs convinces us that the *Gunther* ruling requires a reversal of the holding of the District Court, notwithstanding former decisions of this Court.

The petitioner in *Gunther* worked as a fireman and locomotive engineer for the respondent railroad for 38 years and was removed from active service after his seventy-first birthday because of an alleged physical disability unconnected with any prior litigation involving an injury to him as a result of the railroad's negligent conduct. Being unable to satisfy the railroad of his physical fitness, despite a conflict in diagnosis, Gunther requested, as in the case at bar, the selection of a three-doctor Board to re-examine his physical qualifications. This request was refused by the railroad. He then filed a claim for reinstatement

and back pay with the NRAB. The Board ordered a re-examination by three physicians and upon completion of this examination and based thereon, the Board decided that the railroad had been wrong in disqualifying petitioner for service and sustained his claim for reinstatement and back pay. The railroad refused and after trial in the District Court, the award was held erroneous on the theory that there were no express or implied provisions in the collective bargaining contract which in the court's judgment limited in any way the railroad's absolute right, absent such a provision, to remove petitioner from active service upon the good faith advice of the railroad's physician, 192 F.Supp. 882, 198 F.Supp. 402. The Court of Appeals for the Ninth Circuit affirmed, 336 F.2d 543.

The Supreme Court granted certiorari and reversed on the ground that both the District Court and the Court of Appeals " * * * went beyond their province in rejecting the Adjustment Board's interpretation of this railroad collective bargaining agreement." Speaking through Mr. Justice Black the court stated:

"This Court has said that the Railway Labor Act's 'provisions dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field.' "

In support of this statement the Court cited the case of Brotherhood of Railroad Trainmen, et al. v. Chicago River and Indiana R. Cos., 353 U.S. 30, 31, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957), which gives, among other things, the history and congressional comment surrounding the genesis of the National Railroad Adjustment Board. On the issue of the finality and conclusiveness of the award by the NRAB on the merits of the wrongful removal issue, *Gunther* holds:

"III. Section 3, First (m) provides that Adjustment Board awards 'shall be final and binding upon both parties to the dispute, except in so far as they shall contain a money award.' 48 Stat. 1191, 45 U.S.C. § 153(m). The award

of the Board in this case, based on the central finding that petitioner was wrongfully removed from service is twofold, consisting both of an order of reinstatement and the money award for lost earnings. Thus there arises the question of whether the District Court may open up the Board's *findings on the merits* that the railroad wrongfully removed petitioner from his job merely because one part of the Board's order contained a money award. We hold it cannot." (Emphasis added)

\* \* \* \* \* \*

"The basic grievance here—that is, the complaint that petitioner has been wrongfully removed from active service as an engineer because of health— has been *finally, completely*, and *irrevocably* settled by the Adjustment Board's decision. Consequently, the *merits of the wrongful removal issue* as decided by the Adjustment Board *must be accepted* by the District Court." (Emphasis added)

The Railroad urgently insists that the *Gunther* case is factually distinguishable from the instant case, that the problem therein presented is not comparable to the problem here, and considering the equities involved is not applicable to this case. We recognize that there are factual distinctions. The question of estoppel did not arise in *Gunther* and the decision related to contract and grievance matters. However, it is our definite conclusion that its rationale and specific holding relate precisely to the issues now before us and are dispositive of them.

In the case at bar, in Award No. 19278, Referee Roberts found that there was an agreement between the Railroad and the Union which provided, in part, that:

"(a) A Trainman will not be discharged without an investigation." (Art. 31)

The Board further found that there had been no proper investigation regarding Hodges' physical ability to perform his duties in 1957, at the time the carrier removed his name from the seniority roster. A pertinent portion of Award No. 19278 in this regard is as follows:

"As it is, the *only* issue we have to decide is whether the provisions of the agreement between the union and the carrier were violated and we must find that they were." (Emphasis added)

Having found that the collective bargaining contract rights had been violated, the Board in its Award No. 20389, made a supplemental determination that:

"(1) Claimant is able to resume his duties.

(2) The medical evidence indicates that he should have been restored to service no later than January 29, 1963.

(3) He shall be paid for all time lost since January 29, 1963."

The Railroad, with evident complete candor, attempts to dilute both the Award of the NRAB and the teachings of *Gunther* with the persuasive contention that Hodges is not "physically able" to be re-employed because his pleadings and proof in the initial state court damage suit were couched in terms of total disability and based thereon a substantial judgment was obtained and collected. Thus, the Railroad argues, Hodges is forever precluded from asserting that he has "recovered" from his injuries because of his prior inconsistent position, pleadings, proof, and fully collected judgment in the state court of Georgia under the FELA statute.

To sustain its estoppel argument, the Railroad relies on Scarano v. Central R. Co. of New Jersey, 203 F.2d 510 (3 Cir. 1953); Jones v. Central of Georgia Railroad, 331 F.2d 649 (5 Cir. 1964); Brotherhood of Railroad Trainmen v. Louisville & N. R. Co., 334 F.2d 79 (5 Cir. 1964), cert. den. 379 U.S. 934, 85 S.Ct. 328, 13 L.Ed.2d 345; Reh. den. 379 U.S. 986, 85 S.Ct. 645, 13 L.Ed.2d 579; and other similar cases. These cases present a cogent argument for affirmance were it not for the *Gunther* decision. In our view, *Gunther* necessarily precludes our determination of the disability issue raised by the Railroad which, in turn, precludes the analogous

estoppel argument. To the extent that our decisions in *Jones* and *Brotherhood of Railroad Trainmen—L & N* (and numerous cases from other Circuits and District Courts) hold that the District Court can review a non-monetary award of the NRAB, they have been superseded by *Gunther*. Obviously, our decisions and the decision of the District Court relying thereon were rendered before the decision in *Gunther*.

In a case of this dimension, perfect justice, as always, is an illusory concept. Viable equities exist on both sides, and it is the duty of a court of justice, insofar as humanly possible, to find a just and proper balance and reach a result which will do minimal violence to existing concepts.

Without passing on the issue of estoppel, we feel compelled to say that we strongly disapprove of any practice which permits an employee to sue his employer claiming permanent and total disability establish his claim by proof which convinces the jury of the truth and justice of his allegations, obtain and collect a judgment, and then force his employer to reinstate him in his former position with back pay for time lost. The NRAB asserts that it recognizes and applies estoppel in appropriate cases, and that it has no sympathy for an employee who, by taking inconsistent positions, undertakes to collect twice for the same claim.[1]

In this case the NRAB asserts that estoppel does not apply because Hodges was not a party to the proceedings before it; the claim was prosecuted solely by the Union on behalf of Hodges. However, it cannot be denied that Hodges was the real party in interest who was to profit by a favorable decision even though not a party in name. As indicated in *Gunther*, the NRAB is not bound by common law rules.[2]

The award also states that the carrier should have brought charges against Hodges in accordance with the collective bargaining contract, made its allegations of estoppel, granted a hearing and established a proper record. Then, it says, the matter of estoppel would properly have been presented to it. The Railroad answers that any charges other than its contention with respect to the damage suit would have been "trumped up," and the facts with respect to the lawsuit were fully known by Hodges and the Union. As an alternative procedure the Award suggests that the Railroad could have made a stipulation at the time of the payment of the judgment which would have foreclosed the claimant's right to return to work. It should be noted, however, that the state court judgment was not conditional and it is doubtful that the Railroad would have had the right to attach a stipulation or condition to its payment and satisfaction. It does seem to us that at some point in the procedure the matter of estoppel should have been considered and a decision rendered with respect to it. The NRAB did not consider it, and in our view, we are precluded from doing so by *Gunther*.

---

1. The following is from Award 19287:
"It has been held that the same rules of res judicata and collateral estoppel apply in an administrative proceeding following a court judgment that would apply in a second Court action between the parties, but only as to the parties to the record in the Court proceeding."

\* \* \* \* \*

"This is not to say that we have any sympathy for an employe who offers proof to support one position on one occasion and seeks to contradict himself in making a second claim against the same adversary. Nor is it to say that we lack sympathy for the doctrine of estoppel."

2. The following quotations are from the *Gunther* opinion:
"Paying strict attention only to the bare words of the contract and *invoking old common-law rules for the interpretation of private employment contracts*, the District Court found nothing in the agreement restricting the railroad's right to remove its employees for physical disability upon the good-faith findings of disability by its own physicians." (Emphasis added)

\* \* \* \* \*

"The Adjustment Board, of course, *is not limited to common-law rules of evidence in obtaining information.*" (Emphasis added)

We hold that the District Court committed error in granting the motion of the Railroad for summary judgment. The Award of the NRAB must stand as the result of "compulsory arbitration in this limited field," and it must be enforced.

 There only remains the question of further proceedings with reference to the monetary award due Mr. Hodges as back pay from January 29, 1963. The District Court has authority under the Railway Labor Act to determine the amount of that award as stated in Subdivision IV of the *Gunther* opinion.

The case is reversed and remanded to the District Court for proceedings not inconsistent with this opinion.

Reversed and remanded.