**SOUTHERN PACIFIC COMPANY,**
**Plaintiff,**

v.

**Donald LEIDENHEIMER, Defendant.**
**Civ. A. No. 68–653.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Feb. 21, 1969.

Harry McCall, Jr., New Orleans, La., for plaintiff.

Ivor A. Trapolin, New Orleans, La., for defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

RUBIN, District Judge:

Donald Leidenheimer, the defendant, was injured on November 13, 1960, in the course of his employment as a switchman with Texas & New Orleans Railroad Company, plaintiff's predecessor. On No-

vember 2, 1961, Leidenheimer filed suit in federal court against the Railroad alleging that he had sustained permanent disability and would suffer loss of future earnings. Leidenheimer testified at the trial that he suffered disabling injuries and called medical witnesses who testified to the same effect. The jury awarded him $70,000, and the judgment was satisfied.

Six and one half years later (on March 14, 1968), Leidenheimer came to plaintiff's Avondale Yard and requested that he be reassigned to his former duties as a yardman. Under the collective bargaining agreement between the Railroad and the union to which Leidenheimer belongs, employees are assured certain employment and seniority rights provided they are physically qualified to perform their duties, and Leidenheimer relied on these contractual provisions.

The Railroad refused the request for re-employment because of the position Leidenheimer had taken on trial of his FELA claim and the fact that he had recovered and collected a judgment apparently incorporating anticipated loss of future wages as an element of damages. It now seeks a declaratory judgment [1] that Leidenheimer is estopped from exercising the employment and seniority rights guaranteed in the collective bargaining contract.

Leidenheimer says that he was disabled at the time of the judgment but contends that he is now able to resume his duties. He claims that it is mere speculation to conclude that a substantial element of the jury award was for loss of future wages; that the judgment he received does not estop him from resuming his duties because the collective bargaining agreement establishes a procedure for physical re-examinations; that the Railroad has not followed the procedure; and, that in any event, the controversy is one over which the National Railway Adjustment Board [2] has exclusive jurisdiction and must be submitted to it for arbitration.

Both the Railroad and Leidenheimer now seek summary judgment; the Railroad on the ground that, as a matter of law, it is entitled to the relief prayed for, and Leidenheimer on the ground that the district court has no jurisdiction over the dispute.

■ The Railway Labor Act [3] "represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. The Adjustment Board is well equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the Board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems." Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 243, 70 S.Ct. 577, 579, 94 L.Ed. 795, 799–800.[4]

In the *Slocum* case the Railroad filed suit for a declaratory judgment in a state court seeking an interpretation of a collective bargaining agreement. The Court was presented therefore with the question whether courts have power to adjudicate disputes growing out of the interpretation or application of collective bargaining agreements between railroads and unions representing their employees when the Railway Adjustment Board has not acted.

The Court concluded that the interpretation of collective bargaining agreements in the railroad industry was intended by Congress to be decided by the

1. Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201–2202.

2. 45 U.S.C.A. § 153.

3. 45 U.S.C. §§ 151 et seq. Section 3 of the Act, 45 U.S.C. § 153, created the National Railway Adjustment Board and set forth the Board's jurisdiction.

4. Footnotes omitted.

Adjustment Board, not the courts. It made the scope of its ruling clear by adding: "This reasoning equally supports a denial of power in any court—state as well as federal—to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act." 339 U.S. at 244, 70 S.Ct. at 580, 94 L.Ed. at 800.

Counsel for the Railroad urges that Moore v. Illinois Central R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, indicates jurisdiction here. The reason that decision does not impart jurisdiction here is set forth succinctly in *Slocum*:

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board.

"We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive." 339 U.S. at 244, 70 S.Ct. at 580, 94 L.Ed. at 800.[5]

The exclusive jurisdiction of the Adjustment Board was again emphasized in Order of Railway Conductors of America v. Southern Railway Co., 1950, 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811, where the Court said, "[I]f a carrier or a union could choose a court instead of the Board, the other party would be deprived of the privilege conferred by § 3, First (i) of the Railway Labor Act, 48 Stat. 1191, 45 U.S.C. § 153, First (i), 45 U.S.C.A. § 153, First (i), which provides that after negotiations have failed 'either party' may refer the dispute to the appropriate division of the Adjustment Board." 339 U.S. at 256–257, 70 S.Ct. at 586, 94 L.Ed. at 814.

In 1963, the Supreme Court reasserted the doctrine that the procedures of the Railway Labor Act provide a "mandatory, exclusive, and comprehensive system for resolving grievance disputes." Brotherhood of Loc. Eng. v. Louisville & N. R. Co., 1963, 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172, 176. There the Railroad had sought an injunction against a strike. The Court held that a strike for the purpose of enforcing the union's interpretation of a Board award could be enjoined and the union must utilize the judicial enforcement procedure provided by the Act instead of striking. The Court said: "The right of one party to place the disputed issue before the Adjustment Board, with or without the consent of the other, has been firmly established. Brotherhood of R. R. Trainmen v. Chicago R. & I. R. Co., 353 U.S. [30], at 34, 77 S.Ct. [635], at 637 [1 L.Ed.2d 622]. And the other party may not defeat this right by resorting to some other forum." *Id.*

This rule was applied in Pennsylvania Railroad Company v. Day, 1959, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422, in which a retired employee began a suit in a federal district court for an additional annuity that he claimed was due him. The complaint was ordered dismissed: "Since the Board has jurisdiction, it must have exclusive primary jurisdiction." 360 U.S. at 552, 79 S.Ct. at 1325, 3 L.Ed.2d at 1426. The Court distinguished the *Moore* decision in terms that demonstrate why *Moore* is inapplicable here. "Moore carved out from the controlling doctrine of primary jurisdiction

5. Footnote omitted.

the unusual and special situation of wrongful discharge where the aggrieved employee had been expelled from the employment relationship. Moreover, since the discharge had been accepted as final by the employee, it is probable that the damages accrued primarily after the employment relationship had terminated." 360 U.S. at 553–554, 79 S.Ct. at 1325, 3 L.Ed.2d at 1427.

It had been held that, where an employee was removed for physical disability and the Board later ordered his reinstatement with back pay, federal courts had authority to determine the amount of back pay due although they could not review the merits of the Board's decision on reinstatement. Gunther v. San Diego & Arizona Eastern Ry. Co., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308.

When *Gunther* was decided, the statute provided that "awards [made by the Board] shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award." But the Railway Labor Act was amended on June 20, 1966, to provide merely that "awards shall be final and binding upon both parties to the dispute." As the Court said in Brotherhood of Railroad Signalmen v. Chicago, M., St. P. & P. R. Co., N.D.Ill., 1968, 284 F.Supp. 401, 404, "No exception is now made for money awards. The principal accomplishment of this amendment of (m) was to attach finality to the money award, as well as to other parts of the award. Northwest Airlines, Inc. v. Air Line Pilots Ass'n, International, 373 F.2d 136 (8th Cir. 1967)."

The *Gunther* decision, coupled with the 1966 statutory amendment, thus defines the exclusiveness of the Board's jurisdiction over determination of the employee's right to reinstatement. Its doctrine was applied in a case that almost fits the freshman law student's requirements for a "goose case" in Hodges v. Atlantic Coast Line Railroad Company, 5 Cir., 1966, 363 F.2d 534. A trainman who had been injured at work had sued the Railroad, alleging permanent total disability and had recovered a verdict for $22,500.

After the trial the Railroad removed his name from the seniority list. The union presented the trainman's claim to the Board. The Railroad contended that the trainman was estopped because of the position he took at the trial of his injury suit. The Board refused to apply an estoppel. After it ordered reinstatement, the Railroad resisted, and in the judicial enforcement suit reasserted the estoppel defense. The Fifth Circuit Court of Appeals said:

> "In our view, *Gunther* necessarily precludes our determination of the disability issue raised by the Railroad which, in turn, precludes the analogous estoppel argument. To the extent that our decisions in *Jones* and *Brotherhood of Railroad Trainmen—L & N* (and numerous cases from other Circuits and District Courts) hold that the District Court can review a non-monetary award of the NRAB, they have been superseded by *Gunther*. Obviously, our decisions and the decision of the District Court relying thereon were rendered before the decision in *Gunther*." 363 F.2d at 538.

The very nature of the claim of estoppel assumes that Leidenheimer has a claim for re-employment but that he is equitably barred to make it. If Leidenheimer's claim exists, it arises from the collective bargaining agreement. The interpretation of that agreement and the existence of an estoppel to assert its provisions are questions that Congress has imparted to the Board.

Jones v. Central of Georgia Railway Co., 5 Cir., 1964, 331 F.2d 649, decided by the Fifth Circuit before its decision in *Hodges* (and now of continued vitality only to the extent, if any, that it is not overruled by *Hodges*), like Scarano v. Central Railroad Co. of New Jersey, 3 Cir., 1953, 203 F.2d 510, and Ellerd v. Southern Pacific R. Co., N.D.Ill., 1961, 191 F.Supp. 716, deals only with the merits of the estoppel argument, not with the question whether such disputes must first be presented to the Board. In all of these cases the dispute was presented to the Board. That is the procedure to be

followed here. The Congress has determined upon a procedure for " 'compulsory arbitration in this limited field'," *Gunther*, supra, 382 U.S. at 262, 86 S.Ct. at 371, 15 L.Ed.2d at 312, and the parties may not bypass the arbitration procedure by seeking declaratory judgments.

Accordingly the complaint is hereby dismissed.