**J. L. GIBSON, Plaintiff,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Defendant.**

**Civ. No. 5176.**

United States District Court,
E. D. Texas,
Beaumont Division.

June 17, 1970.

Ernest L. Sample, Beaumont, Tex., for plaintiff.

Charles S. Pipkin, Strong, Pipkin, Nelson, Parker & Powers, Beaumont, Tex., J. P. Simpson, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

FISHER, Chief Judge.

This case arises out of a controversy that is nearly twenty years old. The plaintiff, J. L. Gibson, became an employee of the defendant, Missouri Pacific Railroad Company, in 1927, and held the position of locomotive engineer when, on December 5, 1950, he suffered personal injuries while in the course of his employment. This incident was the basis of a suit for damages pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., which was filed in the District Court of Harris County, Texas, in December of 1952. Upon the trial of that case, Gibson recovered a judgment of $32,500.00, plus interest. There ensued a series of appeals culminating some five years later in a sustention of Gibson's claim by the United States Supreme Court. The judgment with accumulated interest was finally paid on March 17, 1958.

Subsequently, on July 1, 1958, Gibson requested that Missouri Pacific return him to work as a locomotive engineer, which request was refused. He then instituted a grievance proceeding in accordance with the Rules and Working Conditions Agreement which, pursuant to the provisions of the Railway Labor Act, 45 U.S.C. § 151 et seq., was in effect between Missouri Pacific and Gibson's union, the Brotherhood of Locomotive Engineers. Gibson claimed that he should be returned to service and paid for all time lost since July 1, 1958. As is customary in disputes of this nature, the case was at all times handled by union officials. Procedures for settlement of grievances "on the property" were exhausted to no avail, and, as provided for by the Act, the union submitted the unresolved dispute to the appropriate division of the National Railroad Adjustment Board.

At this point Missouri Pacific interposed the objection that the case was not timely filed according to the rules of the Board, and this question was severed from the basic controversy for determination by a Special Board of Adjustment. A referee was appointed to sit with the Special Board in order to break a deadlock between the union and carrier representatives, and the decision was that the dispute had not been timely filed. The effect of this determination under NRAB rules was to bar Gibson's claim for back pay but not to deprive the Board of jurisdiction to determine whether the employee had been wrongfully denied a return to service.

The remaining portion of the dispute was then taken up by the First Division of the Board. It was required that another referee be appointed to cast a deciding vote. The Division found that the Railroad was wrong in terminating Gibson's employment and should continue to carry him on the posted seniority lists, thus preserving his eligibility for retirement benefits. However, the Division declined to order a return to serv-

ice. Referring to Gibson's FELA suit against Missouri Pacific, the award found that,

> "Claimant technically has not been discharged by the carrier but has been paid in advance what the court found to be due him for being permanently deprived of his work."

The position thus taken by the Division was that, having prosecuted to successful conclusion a claim of permanent disability, Gibson is now estopped to assert his ability to return to work for the same employer.

Subsequently, in April of 1965, Gibson filed suit in the District Court of Anderson County, Texas, against his union and L. D. Johnson, the union official who handled arbitration of this dispute, for damages resulting from alleged misfeasance in handling the claim. Summary judgment for defendants was affirmed by the Court of Civil Appeals sub nom. Gibson v. Johnson, 414 S.W. 2d 235 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.), which held that Gibson could not have prevailed on his claim before the NRAB because the record conclusively showed that he filed suit against his employer and had collected damages for total and permanent disability and was therefore estopped to assert a right to return to work. Since successful prosecution of the claim was impossible, the Court held, the union's conduct in presenting Gibson's "fruitless claim before the NRAB could not, as a matter of law, have been a causal factor in the adverse ruling." At 238.

Gibson has now brought this action under 45 U.S.C. § 153, subd. 1(q), seeking to have this Court set aside the NRAB award. In his brief and through testimony offered at trial, plaintiff has indicted the union with misfeasance and nonfeasance in the handling of his grievance and dispute before the NRAB. Though the Union is not a party to this suit, plaintiff argues that this defendant cannot "hide behind the Union's wrongful failure to act." However, that may be, it is clear that these are matters beyond the Court's concern inasmuch as the Court is only empowered under § 153, subd. 1(q) to set aside an award of the NRAB on one of three grounds: for failure of the division to comply with requirements of the Act, for failure of the order to conform or confine itself to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division issuing the order. There is no evidence whatsoever to support a finding of fraud or corruption on the part of any member of the First Division in connection with this case. Nor is there any question raised as to the proper exercise of the Board's jurisdiction.

Basically what Gibson contends is that the Board has mishandled his claim. He contends that his case is essentially a disciplinary case in that it arose out of his claim that the Railroad had discharged him as punishment for prosecuting his FELA suit. The labor contract calls for two types of arbitration, disciplinary and medical. Gibson contends that this dispute was not handled according to either procedure. If it was a medical case, the Board could not arbitrarily, without prescribed medical arbitration, decide that Gibson was a disabled or unsafe employee. If it was a disciplinary case, then Gibson contends that the Board's finding that his employment relationship was improperly terminated by the Railroad entitles him to a decree implementing his right to return to work. Plaintiff argues that the Railroad has accomplished by this "improper" award what it could not do under federal law and the relevant labor contracts: punishment of an employee for pursuing his FELA claim against his employer.

The Railroad contends on the other hand that this is a simple case of an employee who offers proof to support one position on one occasion and seeks to contradict himself in making a second claim against the same adversary. The Court of Appeals has stated the rule in

Jones v. Central of Georgia Railway Co., 331 F.2d 649 (5th Cir. 1964):

"'* * * The Trial Court did conclude that when an employee alleges and successfully proves in such suit that he is permanently injured and disabled, rendering him unable in the future to perform the work of a switchman, or to do other manual labor, and is compensated for lost wages 'past, present and future' and the railroad company pays the full judgment pursuant to such a lawsuit, the railroad is not bound as a matter of law to retain the employee in its services with back pay. The Court grounded its decision on collateral estoppel. In our opinion the reasoning of the Trial Court is sound from a moral and legal point of view in the circumstances of this case. * * *'" At 654–655.

Plaintiff seeks to escape the bar of the estoppel doctrine with two arguments. First, he contends that the Fifth Circuit has abandoned the doctrine by its opinion in Hodges v. Atlantic Coast Line Railroad Co., 363 F.2d 534 (5th Cir. 1966). In that case the NRAB had ruled that the railroad employer had breached its contract by discharging an employee as unfit for service without any investigation. As in our case, the railroad contended that the employee was estopped by reason of his successful FELA action based on allegations of total and permanent disability. The Board, however, rejected the estoppel argument on the ground that the employee was not a party to the proceedings before it; the claim was prosecuted in his behalf by the Union. On appeal, the District Court set aside the award, granting summary judgment for the railroad. The Court of Appeals reversed, holding that the award must stand and be enforced.

It is perfectly clear, however, that the Fifth Circuit's action was *not* predicated upon a rejection of *Jones* and the estoppel doctrine. The Court strongly indicated its disapproval of the Board's construction:

"However, it cannot be denied that Hodges was the real party in interest who was to profit by a favorable decision even though not a party in name. * * * [T]he NRAB is not bound by common law rules." At 539

The reason for the Court's refusal to disturb the award under the rationale of *Jones* was the intervening decision of the Supreme Court in Gunther v. San Diego & Arizona Eastern R. Co., 382 U. S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), which held that a District Court may not *under any circumstances* review the Board's findings on the merits that an employee has been wrongfully removed from service. It was squarely held that the merits of the wrongful removal issue as decided by the Board *must be accepted* by the District Court. In this light, the Court of Appeals concluded in Hodges that, "notwithstanding former decisions of this Court," it was precluded from determining the disability issue and, in turn, "the analogous estoppel argument." The Court went on to say in dictum:

"Without passing on the issue of estoppel, we feel compelled to say that we strongly disapprove of any practice which permits an employee to sue his employer claiming permanent and total disability establish his claim by proof which convinces the jury of the truth and justice of his allegations, obtain and collect a judgment, and then force his employer to reinstate him in his former position with back pay for time lost. The NRAB asserts that it recognizes and applies estoppel in appropriate cases, and that it has no sympathy for an employee who, by taking inconsistent positions, undertakes to collect twice for the same claim." At 539 of 363 F.2d.

Thus it will be seen that far from supporting plaintiff's position, *Hodges* places him in an even more difficult posture, for by the rule of that case, and of *Gunther*, this Court must accept as final and binding the Board's decision on the wrongful removal issue, i. e., that Gibson loses by estoppel.

Plaintiff argues, however, that there is no basis in fact or law for application of estoppel in this case because Gibson realized only a limited recovery in his FELA suit "which would have no relevance to the amount recoverable for total and permanent disability." This contention is not without substance. The First Division had before it evidence that Gibson's earning capacity, amounting to $6,000.00 per year, as measured against a verdict of only $32,500.00, would indicate that the jury only awarded lost earnings over a period of about five years of his life. Furthermore, when it is considered that there was also a claim for pain and suffering, past and future, the award would certainly not seem to reflect a determination of total and permanent disability. An interpretation of Gibson's award was issued by the First Division at the Union's request. The Referee's opinion stated as follows:

"3. It was the opinion of the Referee that termination of the claimant's employment relationship was not proper since his name was retained on the seniority lists; but it was not intended to put the claimant back on the engine or return him to engine service as it was felt his testimony and that of expert medical witnesses proved that such would be unwise, and the award so held."

The "testimony" referred to was obviously that adduced at Gibson's FELA trial, since none was taken in the NRAB proceedings.

The position thus taken by the First Division is that Gibson is bound by testimony offered at his trial to the effect that he was permanently disabled from railroading. But estoppel by judgment ordinarily extends only to matters actually litigated, not to what might have been litigated. Cream Top Creamery v. Dean Milk Co., 383 F.2d 358 (6th Cir. 1967). The judgment and verdict rendered in the state FELA case are in the certified record. Though the case was submitted on special issues, the jury was not asked whether plaintiff's injuries were total or permanent, and such was not a determination necessary under the trial court's instructions to a finding for the plaintiff. The jury was instructed that it could award damages for lost earnings, past and future, and for pain and suffering, past and future; but it was not required to itemize its verdict or explain how the total verdict was to be apportioned among these. Under these circumstances, given the amount of the damages awarded, the verdict seems clearly ambiguous insofar as the nature and extent of Gibson's injuries is in issue. In applying the doctrine of estoppel in Scarano v. Central R. Co. of New Jersey, 203 F.2d 510 (3d Cir. 1953), the Court stated in a footnote:

"* * * We are not unmindful that in a situation of this type where a greater period of time has elapsed between an ambiguous judgment or settlement and an application for reinstatement, there may be a factual question as to whether the recovery enjoyed by the plaintiff was intended to compensate him for longer than the elapsed period. * * * But the fact that the distinction which must be drawn is one of degree rather than of kind does not in any way lessen its force." At 513–514.

Furthermore, it should be noted that the FELA adopts the concept of comparative negligence, authorizing a jury to diminish a plaintiff's recovery in proportion to his own contributory negligence. 45 U.S.C. § 53. Thus in a case where a plaintiff's recovery is substantially diminished in accordance with a jury's finding of contributory negligence, it plainly could not be that the damages awarded were intended as full compensation for lost earnings. In Gibson's case the jury actually found him guilty of contributory negligence (special issue number 15), though it found that the same was not a proximate cause of his injuries (special issue number 16). Though the Fifth Circuit has since held that there must be a causal relation to require diminution for negligence of

the injured worker, Page v. St. Louis Southwestern Ry. Co., 349 F.2d 820 (5th Cir. 1965), the jury in Gibson's case was not so instructed. The record reflects that the trial court admonished them to diminish plaintiff's damages proportionately to any negligence of plaintiff "causing or contributing to his injuries." It is not unimaginable that under these instructions the jury felt free to compare the negligence of the parties and to adjust their verdict as might seem to them appropriate.

 It is a sound principle that an employee is estopped to assert a right to return to work after pursuing an FELA claim in which he holds out his inability to work and recovers a large sum of money in satisfaction of his claim; but when the recovery is nominal or unsubstantial, the jury's purpose may be ambiguous, or it may be clear as a matter of reason that compensation for serious, long-term injury was not contemplated. The doctrine of estoppel was not intended to bind a litigant to a position not successfully maintained. Under the construction of the estoppel doctrine endorsed by the First Division, an employee would in effect forfeit all rights under his labor contract by the filing of an FELA action against his employer. This would be so even though he might recover an unsubstantial judgment or, for strategic reasons, settle the claim for a lesser sum. The doctrine is intended to serve the dictate of public policy that there should be an end to litigation. It should not be employed in such a manner as to intimidate railroad employees who seek to exercise their rights under federal law. It is explicitly provided in 45 U.S.C. § 58 that,

> "Nothing in this chapter shall be held to limit the duty or liability of common carriers or to impair the rights of their employees under any other Act or Acts of Congress."

We think that under the facts of this case the First Division's summary disposition of Gibson's claim by application of the bar of estoppel was clearly arbitrary. The verdict of the jury rendered at Gibson's FELA trial is ambiguous on its face. Gibson has not received a medical examination for the benefit of this record in eighteen years. There is absolutely nothing in the record to justify a finding that this employee is permanently disabled from railroading.

 The question remains whether this Court has jurisdiction to set aside this award when the Court of Appeals was of opinion in *Hodges* that it was foreclosed by the *Gunther* holding from compelling the Board to consider the estoppel issue. We think that we do have such jurisdiction. What the Supreme Court disapproved in *Gunther* was the holding of several lower courts that appeals of NRAB awards could under some circumstances take the form of trials de novo. In *Hodges* the Board had rejected the estoppel theory and decided the case *on the merits*. Such a decision by the rule of *Gunther* was binding upon the District Court. However, such is not our case. In the case at bar there has been no decision on the merits with respect to Gibson's claim that he had been wrongfully removed from service. There has been only summary disposition of the claim upon the theory that it is barred upon its face by estoppel.

 If *Hodges* means that there can be no judicial review of an order of the Board grounded upon estoppel, then employees in Gibson's position may only submit their grievances to the Board assuming the risk that the panel of mediators which hears the case will choose to lower that conclusive bar upon their claims. In fact, the arbitrariness of such administration is evident in a contrast of the First Division's disposition of Gibson's claim with that made of the employee's claim in *Hodges*, where the Board simply declined to apply estoppel. A controversy arising under labor contracts in effect pursuant to the Railway Labor Act or other labor legislation calls for an adjustment of the rights and interests of the parties in the light of relevant considerations of public policy. The Congress has for this reason provided for disposition of these disputes

by a quasi-judicial body. The NRAB is charged by statute with the responsibility of adjusting the rights of the parties to a dispute within his jurisdiction; this Court has the responsibility to insure that this is done within the framework of the statute and of underlying public policy. We think that that policy is frustrated if we permit the Board to dispose of these disputes in such summary manner as was employed here. Gibson had a right to pursue his FELA remedies. He also had a right to enjoy the benefits and immunities of his labor contract. Congress did not intend that these rights should be mutually exclusive. For the Railroad to discharge Gibson out of retribution would be a clear contravention of federal law. We do not prejudge the merits of the controversy, we simply find that on this state of the record the First Division's determination that Gibson is permanently disabled from railroading is arbitrary and without basis in reason or fact.

When § 153 of Title 45 was amended in 1966 to set out the present procedure for judicial review, Senate Report No. 1201, June 6, 1966, said of the bill:

"The committee gave consideration to a proposal that the bill be amended to include as a ground for setting aside an award, 'arbitrariness or capriciousness' on the part of the Board. The committee declined to adopt such an amendment out of concern that such a provision might be regarded as an invitation to the courts to treat any award with which the court disagreed as being arbitrary or capricious. This was done on the assumption that a Federal court would have the power to decline to enforce an award which was actually and indisputedly without foundation in reason or fact, and the committee intends that, under this bill, the courts will have that power." U.S.Code Cong. & Admin.News 1966, p. 2287.

We hold that a District Court has jurisdiction to set aside an award of the National Railroad Adjustment Board which is clearly arbitrary as being without foundation in reason or fact, and upon that basis we set aside the award of the First Division and remand this cause to it with instruction to make new and appropriate findings as to the nature and extent of Gibson's present disability, if any, to work as a locomotive engineer and as to whether he has been wrongfully withheld from service in violation of the contract between the Union and the Railroad.

It is so ordered.