LEWANDOWSKI, Robert M. and Joint Council of Carmen Helpers, Coach Cleaners and Apprentices

v.

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK).

Appeal of Robert M. LEWANDOWSKI, Appellant.

No. 89–1293.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 8, 1989.

Decided Aug. 18, 1989.

---

Marvin I. Barish, William K. Doak, Marvin I. Barish Law Offices, Philadelphia, Pa., for Robert M. Lewandowski.

Malcolm A. Goldstein, Asher W. Schwartz, O'Donnell & Schwartz, New York City, for Joint Council of Carmen, Helpers, Coach Cleaners and Apprentices.

Dennis J. Morikawa, Morgan, Lewis & Bockius, Philadelphia, Pa., Jonathan I. Saperstein, Nat. R.R. Passenger Corp., Washington, D.C., for Nat. R. R. Passenger Corp.

Before SLOVITER and GREENBERG, Circuit Judges, and FISHER, District Judge *.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

Robert M. Lewandowski appeals from a judgment entered March 15, 1989, in this action which he commenced by a petition for review of a decision of a public law board appointed under the Railway Labor Act (RLA). The board held that Lewandowski's former employer, Amtrak, did not violate its collective bargaining agreement with Lewandowski's union when it refused to reinstate him when he sought to return to work after being injured on the job on June 15, 1984.

The injury Lewandowski suffered was a torn rotator cuff injury to his left shoulder. As a result, Lewandowski was absent from his employment for a time, returned to work, but then again went on sick leave in March 1985. In April 1985, Lewandowski brought an action against Amtrak under the Federal Employers' Liability Act (FELA) in the United States District Court for the Eastern District of Pennsylvania seeking damages for his injuries. The court conducted a jury trial between Monday, June 9, and Thursday, June 12, 1986. At that time, Lewandowski was still out of work but he testified that he wanted to return to the railroad if he was capable of doing so. He produced deposition evidence from his physician, Stephen L. Hershey, a medical doctor who examined him immediately before the trial that: "I suggested to him that it was becoming clear to me that on a permanent basis his present job at Amtrak was probably beyond his shoulder's ability to tolerate it [*sic*] and I suggested lighter work if that was possible." To the doctor, this meant work that did not involve lifting with his arms, frequently reaching overhead, carrying heavy things, pulling on winches or getting into awkward places as Lewandowski could not do heavy, physical work.

---

* Honorable Clarkson S. Fisher, Judge, United States District Court for the District of New Jersey, sitting by designation.

In his closing argument to the jury, Lewandowski's attorney conceded that Lewandowski was not unemployable. But he argued that the evidence showed that Lewandowski had gone back to work for three months but could not do railroad work so went on sick leave again. He indicated that Lewandowski could only do work that did not involve real physical activity and thus "for the rest of his life he is going to be working at work that doesn't pay the kind of money that he was earning at the railroad." He emphasized that Lewandowski would have reduced earnings for many years and he asked for an award of $221,960. Lewandowski's attorney hammered home on the seriousness of the injury and his permanent inability to return to Amtrak in the following argument:

> That is just the first part of the case, ladies and gentlemen. That is the simplest part, because as I said before, Mr. Lewandowski's future is involved too; that 40 years hopefully, maybe even more, but those years down the line when Mr. Lewandowski is not going to be able to work at the railroad. And make no mistake about it, ladies and gentlemen, Mr. Lewandowski is not going to be able to work at the railroad. There is no doubt that Bob Lewandowski suffered that torn rotator cuff. And in spite of the so-called objective testimony of Dr. Sbarbaro, there is no doubt he can work at the railroad now or any time in the future. He can't. He can't go back there now, he can't go back there tomorrow, he won't be able to go back there next year or any other time because the job that he was doing moving all that heavy stuff around, working overhead, Dr. Hershey said 'No way, you can't do that. The only things you can do are light work that doesn't involve pushing, pulling, lifting, putting your arms over your head.' And there are no jobs like that, ladies and gentlemen. There are no jobs like that for Bob Lewandowski at the railroad.

The jury returned a verdict for $120,000, reduced to $72,000 because it found Lewandowski 40% responsible for contributory negligence.

Remarkably on Monday, June 16, 1986, notwithstanding his attorney's plea to the jury on the preceding Thursday, Lewandowski sought to return to work at Amtrak. Amtrak would not permit this and Lewandowski attempted to return again in September 1986, and was again rebuffed. Thereafter Lewandowski filed a grievance under rules 21 and 22 of the collective bargaining agreement between Amtrak and his union which led to the decision of the public law board. Rule 21 deals with the rights of employees out of work for various reasons, including sick leave, and rule 22 is concerned with physical examinations and disqualifications. When Lewandowski attempted to return to work in September he had a note from Dr. Hershey dated September 4, 1986, that said he could return to work with no restrictions or medication.

In its findings, the public law board noted that Amtrak contended that Lewandowski was estopped from advancing his grievance and that the rules on which Lewandowski relied were inapplicable. The board agreed that Lewandowski

> was awarded compensation by a jury on the basis of the representation of his attorney that he would be permanently incapable of returning to employment with [Amtrak]. Under those circumstances, this Board finds that [Amtrak] did not act in violation of the Agreement when it refused to reinstate an individual who it was acknowledged was totally incapable of performing railroad work.

The employee member of the board dissented in what he characterized as "the strongest terms." He said that the majority did not deal with the real issue because, in his view, Lewandowski did not ask to be reinstated. Rather, he only wanted to have the medical procedures of the collective bargaining agreement invoked so that, depending upon the outcome of the procedures, he might return to work. The dissenting member criticized the majority for relying on Lewandowski's attorney's argument to the jury that Lewandowski was permanently disabled because a summation is not evidence, Lewandowski did not testi-

fy that he was permanently disabled, and the amount of the award showed there was no finding that Lewandowski was permanently disabled. The petition for review followed.

In its memorandum opinion of March 10, 1989, the district court set forth the background of the matter. It indicated that the standard of review was very narrow and that the board's findings were conclusive on the parties and could be set aside only if the board failed to comply with the provisions of the RLA or failed to confine itself to matters within its jurisdiction, or if there was fraud or corruption. *See* 45 U.S.C. § 153 First (q) and *Union Pacific R.R. Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). The court found that it could not conclude that the board erred in holding that Lewandowski was not entitled to a medical examination because of the "well-established principle that an employee who alleged in a FELA action that his injuries prevent him from returning to his railroad employment may be prevented by the doctrine of judicial estoppel from asserting a contrary position in a subsequent action seeking employment reinstatement." The court cited *Scarano v. Central R. Co.,* 203 F.2d 510 (3d Cir. 1953), in support of this proposition. The court pointed out that while Lewandowski did not allege in the complaint that he was permanently disabled, his medical evidence and claim for lost future earnings was consistent with his attorney's position in summation that he was. Thus, the district court entered judgment for Amtrak and this appeal followed.

On this appeal Lewandowski urges that the district court erred in affirming the board on the basis of judicial estoppel. He further argues that the board exceeded its authority under the RLA, apparently because, in Lewandowski's view, it ignored the contractual issue "which the Union placed before it," brief at 12. Thus, by "ignoring the contractual issue before it and misapplying the doctrine [of] judicial estoppel, the Public Law Board overstepped its mandate under the RLA and exceeded its authority to act." *Id.* at 13.

Lewandowski further contends that the board ignored the contract.

We will affirm. Inasmuch as we make a plenary review of the district court's decision on Amtrak's motion to dismiss or for summary judgment, we are effectively reviewing the board under the deferential standard in *Union Pacific* which was correctly described by the district court.

*Scarano,* 203 F.2d at 510, is controlling. There the plaintiff employee who was injured on the job brought an action against the carrier under the FELA to recover for his injuries. He claimed to be totally disabled but the carrier denied that and medical testimony was presented supporting each position. The matter was submitted to a jury which returned a general verdict of $35,000 for the plaintiff. After a motion for a new trial was filed but before it was decided, the case was settled for $27,000. Thereafter, the plaintiff attempted to reclaim his job pursuant to a collective bargaining agreement entitling him to reinstatement when he was physically able to perform the duties of his job. The carrier would neither reinstate him nor have him examined to determine his physical condition. *Id.* at 511. The plaintiff then brought an action in the district court for breach of contract, including back wages within his claim for damages. The carrier moved for summary judgment on the basis of the plaintiff's claim in the earlier action that he was permanently disabled from doing railroad work. The plaintiff responded that the only issue regarding his health was whether he was physically qualified to perform the necessary work when he sought reinstatement and that the earlier action could not answer that question as the basis of the verdict was unknown. *Id.* at 512.

We agreed that collateral estoppel, now called issue preclusion, could not apply as we did not know the basis of the underlying judgment. We, nonetheless, applied judicial estoppel and said:

The 'estoppel' of which, for want of a more precise word, we here speak is but a particular limited application of what is sometimes said to be a general rule that

'a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits.' II Freeman on Judgments § 631 (5th ed.1925). Whether the correct doctrine is that broad we do not decide. The rule we apply here need be and is no broader than this. A plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with this earlier contention. Such use of inconsistent positions would most flagrantly exemplify that playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate.

*Id.* at 512–13; *see also Murray v. Silberstein,* 882 F.2d 61 (3d Cir.1989); *O'Neida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Bower v. O'Hara,* 759 F.2d 1117, 1127, 1129 (3d Cir.1985) (Sloviter, J., concurring and dissenting).

It is evident under *Scarano,* that at least in this circuit, even if Lewandowski's action for reinstatement could have been initially brought in the district court rather than before a public law board, his claim would have been rejected. It thus follows that under the narrow review possible here, we must affirm. While Lewandowski did not assert in his complaint that he was permanently disabled, his claim to the jury was predicated on the evidence he presented and the argument of his attorney. Indeed, he does not even suggest that the jury ever saw his complaint. Furthermore, we are totally unimpressed with his point that he did not testify that he was permanently disabled. A plaintiff in a personal injury action describes his conditions; he does not give a prognosis. That is for the medical experts.

In his brief Lewandowski is now critical of his trial attorney in the FELA action as he writes: "Despite the lack of evidence that Mr. Lewandowski was permanently disabled, or any claim or testimony by Mr. Lewandowski that that was true, Mr. Lewandowski's attorney argued in his closing statement to the jury that Mr. Lewandowski would not be able to return to Amtrak." Brief at 2. What Lewandowski overlooks is that he cooperated in this attempt to enhance his recovery by staying away from his employment and then, apparently without embarrassment, attempted to reclaim his job only four days following the trial, or just after the intervening weekend. In this regard, we point out that while we are by no means suggesting that Lewandowski was not fully justified when he stopped working in March 1985, the timing of his decision that his condition no longer disabled him from railroad work was extraordinary. If he had come to the same conclusion regarding his condition only one week earlier and attempted to return to work before the trial, the outcome of the FELA action could well have been less favorable to him. At the very least, we may infer that Lewandowski would have thought that an attempt to return to work before the trial would have had a negative effect on the damage claim. In the circumstances, we are not impressed with Lewandowski's efforts to avoid the consequence of his strategy in the original action by blaming his attorney.[1]

We also note that under *Scarano* the critical issue is what the employee contended in the underlying proceeding, rather than what the jury found. Thus, the fact that we cannot say that the $120,000 finding for damages represented a conclusion by the jury that Lewandowski was permanently disabled makes no difference. Nor, obviously, does it make a difference that the verdict was reduced because of contributory negligence, as a finding of the party responsible for an injury is unrelated to the

---

1. We also point out that Lewandowski does not suggest that he urged his attorney to withdraw his argument to the jury that he was permanently disabled from railroad work. While we cannot be certain that Lewandowski was in court when the argument was made, we think it likely that he was, as he testified at the trial, the trial was quite short, and injured plaintiffs ordinarily are in court during trials regarding their claim.

severity of the injury. Furthermore, we reject Lewandowski's argument that the board ignored the contractual issue before it. To the contrary, the board found that because of the estoppel Amtrak did not violate the contract.

The parties have cited cases from other circuits in support of their respective positions. Lewandowski relies on: *Hodges v. Atlantic Coast Line R.R. Co.*, 363 F.2d 534 (5th Cir.1966), *cert. denied*, 385 U.S. 1011, 87 S.Ct. 706, 17 L.Ed.2d 548 (1967); *Atchison, Topeka and Santa Fe Ry. Co. v. Public Law Board*, 340 F.Supp. 1136 (N.D. Ill.1972); *Gibson v. Missouri Pac. R.R. Co.*, 314 F.Supp. 1211 (E.D.Tex.1970), *rev'd on other grounds*, 441 F.2d 784 (5th Cir.), *cert. denied*, 404 U.S. 855, 92 S.Ct. 102, 30 L.Ed.2d 96 (1971); *System Federation, No. 30 v. Braidwood*, 284 F.Supp. 611 (N.D.Ill. 1968). Amtrak has cited both *Jones v. Central of Georgia Ry. Co.*, 331 F.2d 649 (5th Cir.1964), and *Ellerd v. Southern Pac. R.R. Co.*, 191 F.Supp. 716 (N.D.Ill.1961). We, however, will not make an analysis of these cases as they are not controlling in this circuit and in any event may not be reconcilable among themselves. The cases discuss factors such as the size of the verdict, allegations in the complaint, adequacy of the representation of the employee, and terms of the contract, in determining whether an employee will be estopped from asserting he is not disabled from railroad employment after an FELA action. It is sufficient for us to point out with respect to these cases that regardless of what has been held elsewhere, in view of *Scarano* we cannot possibly set aside the decision of the board finding estoppel in the circumstances of this case. We are, of course, not concerned with what we might have concluded if the board had not found the estoppel.

The order of March 15, 1989, will be affirmed.