Ezra A. JONES, Petitioner,

v.

**CENTRAL OF GEORGIA RAILWAY COMPANY, Respondent.**

Civ. A. No. 8199.

United States District Court
N. D. Georgia,
Atlanta Division.

Aug. 13, 1963.

**910**

Lewis & Lewis, Atlanta, Ga., for plaintiff.

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga.; Julian C. Sipple, Savannah, Ga., for defendant.

MORGAN, District Judge.

On January 16, 1963, the petitioner in the above-styled case filed in this Court his petition for enforcement of an award and order of the National Railroad Adjustment Board, rendered on October 4, 1961. He states in his petition that he was employed by the respondent on De-

cember 29, 1953, and was serving as a switchman or yard helper in the respondent's Atlanta Yards on a switch crew with Yard Foreman A. M. Hand. This crew went to work at the respondent's Industry Yard at 7:59 A.M. and was due off at 3:59 P.M. on this date. At about 3:30 P.M., while this switch crew was switching at the Colonial Stores Warehouse, the petitioner dismounted from the cars onto the platform in order to be in position to pass signals. As his foot made contact with the platform, it hit some water and ice on the platform and slipped from under him, causing him to fall and strike the platform and to bounce into the side of moving cars as they were being shoved along the platform. He then fell to the ground and track below the cars and the platform, injuring his back.

The petitioner, being unable to effect a settlement with the respondent, on December 30, 1954, filed a suit against the respondent in the sum of $75,000.00 in the Superior Court of Fulton County, Georgia. He was awarded a verdict in the sum of $21,850.00 at the hands of a jury in Fulton Superior Court in June of 1956.

Thereafter, on July 1, 1956, the petitioner's name was removed from the Seniority Roster by the respondent, the effect of which was to dismiss the petitioner from the service of the respondent.

The petitioner states that he is a member of the Brotherhood of Railroad Trainmen, was a member of this organization at the time of his injury, and that the Switchmen's Union of North America was the organization certified by the National Mediation Board as having the right to represent yardmen employed by the respondent, Central of Georgia Railway Company. He contends that his removal from the Seniority Roster was in violation of the Collective Bargaining Agreement between the Central of Georgia Railway Company and the Switchmen's Union of North America.

After processing his grievance in accordance with the Collective Bargaining

Agreement existing between the respondent and the Switchmen's Union of North America up through the highest official of the respondent designated to handle such disputes, he then submitted his claim ex parte to the National Railroad Adjustment Board.

The Board found that the petitioner's name was unjustly removed from the Seniority Roster and that he was unjustly withheld from service, and, thereafter, on October 4, 1961, entered an award sustaining the claim of the petitioner and directing the respondent to restore the petitioner to service, seniority unimpaired, with payment for all time lost. On October 4, 1961, the National Railroad Adjustment Board issued an order directed to the respondent to make the award effective and to pay petitioner the sum to which he claims he was entitled thereunder on or before November 4, 1961.

The respondent has failed and refused to comply with this award of the National Railroad Adjustment Board, and the petitioner urges this Court to enter such judgment as may be appropriate to enforce the award and order of the National Railroad Adjustment Board.

On February 18, 1963, the respondent filed its answer to the petitioner's complaint, admitting that it has not complied with the aforesaid award and the order issued thereunder, and also claiming that the petitioner was and now is estopped from pursuing his claim for reinstatement to the employ of the Central of Georgia Railway Company and for pay for lost time as well as from attempting to show that he is now physically able to perform work as a switchman. The respondent points out that it was alleged in the petitioner's original suit seeking damages from the Central of Georgia Railway Company, said suit having been filed in the Superior Court of Fulton County on December 30, 1954, that the petitioner was permanently disabled as a result of the injuries which were made the basis of his suit and that, by reason of said injuries, he would be unable to perform railroad work as a switchman or any other manual work. In support of these allegations, the petitioner offered proof at the trial, at the conclusion of which a verdict in the sum of $21,850.00 was rendered in favor of the petitioner. The respondent states that this verdict was paid in full by it, and that for petitioner, following his recovery of this $21,850.00, to have asserted that he was no longer disabled and was consequently entitled to re-employment with the Railway Company with back pay, was and is unconscionable and, under the law, such inconsistent and contradictory positions preclude or estop petitioner from seeking any further recovery from the respondent or from asserting any right to further employment.

On May 13, 1963, the respondent, Central of Georgia Railway Company, moved this Court to enter summary judgment in favor of the respondent in accordance with Rule 56 of the Federal Rules of Civil Procedure on the ground that there is no genuine issue as to any material fact and that it was entitled to judgment as a matter of law. On May 20, 1963, petitioner filed his motion to dismiss the respondent's motion for summary judgment, and on May 24, 1963, filed his cross-motion for summary judgment, contending that, because of the findings of the National Railroad Adjustment Board, there is left before this Court no genuine issue as to any material fact and that petitioner is entitled to judgment as a matter of law.

Both motions are now before this Court for consideration. Following a study of the briefs submitted by both parties and the authorities contained therein, this Court is convinced that the respondent should prevail in this matter and, therefore, will grant the respondent's motion for summary judgment. The following reasons will explain this action of the Court.

The petitioner, in his suit filed in the Superior Court of Fulton County, Georgia, sued for injuries which he contended before a jury were permanent, and he

also submitted proof that he would not be able in the future to resume work as a switchman. He recovered $21,850.00 from the respondent on the basis of such proof. Following this recovery, the Railway Company took the position that the petitioner was estopped by law from seeking re-employment with the respondent and from seeking to have his name restored to the Seniority Roster from which it had been removed. In essence, it seems that the Railway Company believed that the petitioner *had declared himself* permanently disabled and that, by submitting proof that he would not in the future be able to perform work as a switchman, he had forfeited any future rights to employment with the railroad under his employment contract.

The petitioner's theory advanced here is that the only relevant question relating to his health is whether or not he was physically qualified to perform the necessary work on the day that he applied for reinstatement, and that this fact is not judicially determined by the judgment entered in the earlier action since there is no way of knowing whether the jury in that action decided that petitioner was permanently disabled.

It seems to this Court the applicable rule of law is firmly established that one who recovers a verdict based on future earnings, the claim to which arises because of permanent injuries, estops himself thereafter from claiming the right to future re-employment, claiming that he is now physically able to return to work. Scarano v. Central R. Co. of New Jersey, 3 Cir., 203 F.2d 510, affirming D.C.Pa. 107 F.Supp. 622; Wallace v. Southern Pac. Co., D.C., 106 F.Supp. 742; Buberl v. Southern Pac. Co., D.C., 94 F.Supp 11.

In this case permanent injury was alleged in his petition in the Superior Court. The petitioner had presented proof of it. The jury returned a substantial verdict for him. The jury's award in this tort action, it seems to this Court, was obviously intended to compensate the petitioner for permanent or protracted loss of opportunity to work as a switchman. Having once recovered for this loss, it is unconscionable for him to attempt to do so again.

The fact that the testimony in the case tried in the Fulton Superior Court had to do with the suffering of a permanent injury by the petitioner is supported by the affidavit of Mr. James K. Rankin, a member of the law firm representing the respondent, who certifies to the effect that Dr. Robert E. Wells, an orthopedic surgeon, and Dr. Arthur Pruce, a physician, gave testimony in that trial that he could not do railroad work of any kind. The Court Reporter's notes have been destroyed. Therefore, the affidavit of Mr. Rankin serves in this case to support his contentions as set out in his motion for summary judgment.

■ It is well settled that an employee cannot be discharged or removed from the seniority list because of a suit against his employer. This is true, even if in his suit he contends that his disability is total and permanent, for an election of remedies is completely made only by pursuing a remedy to a final conclusion. But when he has not only claimed but has collected damages for the total and permanent loss of his working ability, it is inconsistent to claim that he still has that ability and that the carrier must employ it or pay for it on a seniority basis. Having finally submitted the question to the jury through the introduction in evidence of the Carlisle Mortality Tables, which were introduced for the purpose of showing the probable remaining years of a man his age, and having collected judgment for the total loss of the ability to perform the services, it is completely unconscionable that he can now justify a claim that the carrier should employ those same services or in default pay for them again.

■ The Court does not believe that petitioner's employment rights were violated by the respondent following his request that he be restored to the service of the Railway Company. Once he had declared in the State Court that

he was permanently disabled and unable to, in the future, perform work as a switchman and offered proof in substantiation of his disability, he was no longer in position to claim, with respect to any alleged future rights or privileges, further employment under his prior employment contract. It is true that the Referee of the Railroad Adjustment Board stated that this petitioner was not estopped, by virtue of the State Court verdict and judgment, from seeking reinstatement to the service of the Central of Georgia Railway with pay for lost time. In the opinion of this Court, regardless of any decision of the Board, the fact that a dispute of this kind was before the Board and the Board ruled against estoppel does not, under the law, bar the respondent as employer from asserting the defense of estoppel in the present litigation. The Board's decisions do not have the quality of being final in the legal sense. This is made clear in Dahlberg v. Pittsburgh & L. E. R. Co. et al., 3 Cir., 138 F.2d 121. The Third Circuit Court of Appeals said in that case:

> "In construing a statute, words may not be taken out of their context and endowed with an absolute quality nor may the plan of the entire statute be disregarded in interpreting any single provision. Obviously the expression 'final and binding' has its limitations. Even the appellants concede the award is neither so final that it may not be set aside by the Court if the Board acted beyond its statutory authority nor so binding that the carrier can be compelled to obey it without the aid of the Court in enforcement proceedings. We think that the general plan of the statute clearly discloses an intention to use the words in the sense that the award is the definitive act of a mediative agency, binding *until* and *unless* it is set aside in the manner prescribed, and that it was intended that the Court should exercise broader powers than merely directing coercive process to issue if satisfied that the proceeding was authorized by law. * * * [Emphasis supplied]

"If the Act should be interpreted as precluding consideration of the merits by the Court, serious doubts as to its constitutionality would arise. Such interpretation would amount to vesting the Board with full judicial power; and, as was said in a similar but other connection in the dissenting opinion in Washington Terminal Co. v. Boswell, 75 U.S. App.D.C. 1, 124 F.2d 235, 276, 'There can be no valid delegation of governmental power to nongovernmental agencies. Carter v. Carter Coal Co., 1936, 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160. The Adjustment Board, consisting of bi-partisan groups paid by and set up to represent the employees and carriers respectively, is not a governmental agency.'

"If it could be assumed that the Adjustment Board was a governmental agency still other doubts as to the Act's constitutionality would be present, for example, the question whether there is such a lack of safeguards in the procedure before the Board as to amount to a denial of due process, there being no Court review of the merits. This point was dealt with by Justice Rutledge in the Washington Terminal Co. v. Boswell, supra, as follows: 'Much of the argument has been built around the alleged inadequacy of the administrative proceeding as complying with the requirements of due process, particularly in the absence of formal pleadings, opportunity for examining witnesses and cross examining them, opportunity for representation by counsel and for oral argument. These things would be important, if the Board's decisions were final in the legal sense and for purposes of enforcement, as to either facts or law. But, as has been shown, they have no such quality.'"

Two questions are before this Court: (1) Is this Court bound by the findings and order of the Board; and (2) If not,

914

was the order of the Referee erroneous. I believe that the first question must be answered in the negative, and that the second question must be answered in the affirmative. There is no doubt in my mind about the fact that this Court has ample jurisdiction in the present case, and, this being true, it is in position to rule on the question of estoppel both with respect to the petitioner's request for reinstatement and his request for pay for lost time.

I, therefore, believe that by reason of the position the petitioner took at the time he sued in the State Court and where he obtained a verdict and judgment for $21,850.00, which was paid in full, he is estopped from proceeding with the present suit.

The motion for summary judgment on behalf of the respondent is, therefore, granted, and the motion for summary judgment on behalf of the petitioner, for the reasons stated above, is denied.

It is so ordered.