Ezra A. JONES, Appellant,

v.

CENTRAL OF GEORGIA RAILWAY
COMPANY, Appellee.

No. 20948.

United States Court of Appeals
Fifth Circuit.

May 6, 1964.

Rehearing Denied June 3, 1964.

T. J. Lewis, Jr., Lewis & Lewis, Atlanta, Ga., for appellant.

Julian C. Sipple, Savannah, Ga., James K. Rankin, Atlanta, Ga., John B. Miller, Savannah, Ga., for appellee.

Before MARIS,* GEWIN and BELL, Circuit Judges.

GEWIN, Circuit Judge.

The appellant, Ezra Jones (petitioner), complains of the summary judgment dismissing his complaint entered against him by the U. S. District Court for the Northern District of Georgia in a proceeding seeking to enforce an award of the National Railroad Adjustment Board (NRAB) against the appellee, Central of Georgia Railway Company (respondent). The respondent moved the Court to enter summary judgment in its favor pursuant to Rule 56, Fed.R.Civ.P., the petitioner

* Of the Third Circuit, sitting by designation.

filed his motion to dismiss the summary judgment motion of respondent, and later filed his cross-motion for summary judgment. There appears to be no genuine issue as to any material fact. The fundamental matter in controversy begins with an earlier suit filed by petitioner against respondent in the Superior Court of Fulton County, Georgia.

For several years prior to December 29, 1953, the petitioner had served as a switchman in the railroad yards of the respondent in Atlanta, Georgia. On that date he was injured while working. His claim for personal injury was not settled by agreement and suit was instituted under the Federal Employers' Liability Act to recover for his injuries, 45 U.S. C.A. § 51 et seq. Petitioner alleged and defendant denied that petitioner was permanently disabled as a result of the injuries claimed and made the basis of the suit. Petitioner alleged that he would be unable in the future to perform railroad work as a switchman or to perform any other type of manual work. His complaint sought recovery "for lost wages past, present and future" and "for his diminished capacity to labor and earn money." At the trial in the Georgia State Court, he submitted proof that he was permanently injured and that he would not be able in the future to resume work as a switchman or to do other manual work. The Carlisle Mortality Tables were introduced in evidence. The suit was filed in December, 1954, approximately one year after the alleged injury. The case was a contested, adversary proceeding. On June 14, 1956, the jury brought in a general verdict on behalf of the petitioner in the amount of $21,850. Judgment was entered pursuant to the verdict and the judgment was paid by the respondent in August, 1956.

On July 1, 1956, the respondent removed the name of the petitioner from the seniority roster without notice to him. His name had been carried on the roster in its proper place before the verdict. Petitioner contends that he did not know of this action on the part of the respondent until January, 1957, at which time he wrote to respondent's superintendent in Atlanta protesting the removal of his name and requesting that it be restored to its proper place on the roster. No reply was received to this request. At this time the petitioner remained unable to work. In April of 1958, petitioner submitted himself to a surgical operation and on May 11, 1959, he wrote a letter to respondent in which he stated that he had recovered from his operation and was ready to resume his former employment. On May 12, the petitioner also wrote a letter and delivered it with a letter from his physician to respondent's superintendent, notifying respondent that petitioner was reporting for duty; but he was not permitted to work. He was not re-employed and on May 13, 1959, he filed a claim for pay which was denied. Seniority rosters of the respondent are republished twice a year, in January and July. When petitioner requested that he be returned to his former job as switchman in May, 1959, almost three years had elapsed since he had collected his judgment against the respondent.

In accordance with the Collective Bargaining Agreement existing between the respondent and the Switchmen's Union of North America, petitioner processed his grievance up through the highest official of the respondent designated to handle such disputes, but without success. He then submitted his claim *ex parte* to the National Railroad Adjustment Board. The Board found that the petitioner was unjustly withheld from service.[1] On October 4, 1961, the NRAB entered an award sustaining the claim

---

1. The Collective Bargaining Agreement contains the following provisions:
"(b) No switchman shall be disciplined or dismissed without an investigation by the proper officers * * *."

"(c) The accused and his representatives shall be confronted with all the evidence given, hear the testimony of all witnesses and shall be privileged to question any and all who may testify * * *."

of the petitioner and directed the respondent to restore the petitioner to service without impairment of seniority, and with payment for all lost time. Pursuant to the award, the NRAB issued an order directed to respondent to make the award effective and to pay the petitioner the sum to which he claimed he was entitled. The respondent has failed and refused to comply with the award and enforcement proceedings were instituted in the District Court pursuant to 45 U.S. C.A. § 153 First (p).[2]

The respondent contends that the petitioner is estopped from pursuing his claim for reinstatement and pay for lost time, and from showing that he is now physically able to resume work as a switchman. In support of its contentions the respondent points to the complaint, trial, jury verdict, judgment, and payment by it of the amount of the jury verdict in the Superior Court of Fulton County, Georgia, wherein the petitioner alleged, proved and collected for injuries which he claimed permanently disabled him from performing railroad work as a switchman or any other manual work. It is contended that to require respondent to re-employ petitioner with back pay would be unconscionable and that petitioner, under the law, may not take such inconsistent and contradictory positions with the respondent; and further that the effect of the Board's order is to permit the petitioner to recover twice

for his alleged injuries. The petitioner relies upon the award made by the NR AB, and urgently insists that the District Court has but one duty after the making of an award of this type and that is to enforce it. Petitioner relies upon the statutory language of 45 U.S.C.A. § 153 First (m).[3] The petitioner seeks reinstatement and back pay in accordance with the award.[4]

The question presented to us is whether the District Judge committed error in refusing to enter judgment enforcing the award of the NRAB and in sustaining the respondent's contention of estoppel by granting motion of respondent for summary judgment and denying the petitioner's cross-motion for summary judgment. The opinion of the District Court is reported in 220 F.Supp. 909. We affirm.

■ In our view § 153 First (m) and (p) must be construed *in pari materia*. It is improper to consider one without the other. Both were inserted in the Railway Labor Act by the amendment of that Act on June 21, 1934. Subsection (p) is that portion of the statute which confers jurisdiction upon the District Court to enforce the orders of the Board. In determining the meaning of subsection (m) we cannot disregard pertinent provisions of subsection (p) which direct that the District Court "shall *proceed in all respects as* [*in*] *other civil suits*" and that in the trial of such a suit "the find-

2. 45 U.S.C.A. § 153 First (p): "If a carrier does not comply with an order of * * * the Adjustment Board * * * the petitioner * * * may file in the District Court of the United States for the district in which he resides * * * a petition setting forth briefly the causes for which he claims relief, and the order of the * * * Adjustment Board * * * *shall proceed in all respects as other civil suits,* except that on the trial of such suit the findings and order of * * * the Adjustment Board shall be *prima facie* evidence of the facts therein stated * * *. If the petitioner *shall finally prevail* he shall be allowed a reasonable attorney's fee, to be taxed and collected as * * * costs of the suit. The district courts are empowered * * * to make such order and enter

such judgment, by writ of mandamus or otherwise, as may be appropriate *to enforce or set aside the order* of * * * the Adjustment Board." [Emphasis added.]

3. Sec. 153 First (m), insofar as here applicable, provides:
   "(m) The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the *awards shall be final and binding upon both parties to the dispute,* except insofar as they shall contain a money award." [Emphasis added.]

4. Petitioner concedes that the Court has authority to review a money award by the Board.

ings and order * * * [of the Board] * * * shall be *prima facie* evidence of the facts therein stated." That the right of enforcement is conditional and not absolute is demonstrated by the following language, "*if* the petitioner shall *finally* prevail"; and such courts "are empowered under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce *or set aside* the order of the * * * Board." [Emphasis added.] The quoted language does not import absolute finality to the order of the Board. If absolute finality was intended, it is difficult to understand how the courts could proceed in all respects as in other civil suits. Finality does not comport with the provision that the finding should be only *prima facie* evidence of the facts stated. If such were the case, no "if" would be attached to the right of the petitioner to finally prevail; and the court would not have the choice *to enforce or set aside the order* of the Board. A like conclusion has been reached by courts in practically all of the circuits during the thirty years following the enactment of the amendment to the statute.

We will not undertake a review of all of the cases, but substantially the same question was presented to this Court in Hodges v. Atlantic Coast Line Railroad Co. (5th Cir. 1962), 310 F.2d 438. In Hodges the award was conditional; the Trial Court dismissed the complaint on the ground that the award was too vague to be final and enforceable; and there were other considerations which distinguish that case factually from the case under consideration. But the question here involved was involved there also, with respect to which this Court concluded as follows:

"The statute specifically charges the District Court with the duty to hear and determine suits to compel compliance with an award of the Adjustment Board. That contemplates, of course, that the Court will compel enforcement only if such awards are in accordance with controlling law. If a purported award does not meet these standards, either because of its intrinsic holdings, or because of an impermissible conditional alternative form in which it is cast, the Court may not, and should not, order compliance with it. But this is because the award is not legally acceptable, not because the Court lacks power."

To the same effect is one of the earlier cases, Washington Terminal Co. v. Boswell, (D.C.Cir.1941), 75 U.S.App.D.C. 1, 124 F.2d 235, wherein the Court of Appeals for the District of Columbia concluded:

"Much of the argument has been built around the alleged inadequacy of the administrative proceeding as complying with the requirements of due process, particularly in the absence of formal pleadings, opportunity for examining witnesses and cross examining them, opportunity for representation by counsel and for oral argument. These things would be important, if the Board's decisions were final in the legal sense and for purposes of enforcement, as to either facts or law. But, as has been shown, they have no such quality. Though the effects of an award favorable to an employee are substantial, they do not conclude the employer's rights. The Board cannot enforce its awards. That is left for the courts to do. It can be done only in a suit de novo. In the suit the cause of action is upon the award, to secure its enforcement. But the parties are not limited by its provisions in the trial. The employee must set forth 'the causes for which he claims relief' and the Board's order. 45 U.S.C.A. § 153, First (p). The suit must 'proceed in all respects as other civil suits,' except that the order and findings 'shall be prima facie evidence of the facts therein stated.' Ibid. The carrier is limited in no way as to its defenses or the evidence it may wish

to present. Its day in court in the enforcement suit is a full one. That is hardly disputed. The short answer, therefore, to the argument that the administrative proceeding is wanting in due process is that, if so, this is entirely immaterial. Any failure in this respect is cured by the full and complete opportunity which the carrier is given in the enforcement suit to make its defense under all procedural and substantive guaranties of the Constitution."

On appeal Boswell was affirmed in the Supreme Court by an equally divided court. To date it has not been overruled.

Another leading case in which the statute is analyzed and construed is Dahlberg v. Pittsburgh & L. E. R. Co., (3rd Cir.1943), 138 F.2d 121, where the Court held:

"The appellants (employees) now argue (although the point was not raised before the District Court) that under the Railway Labor Act of 1934, 45 U.S.C.A. § 151 et seq., the Court was without jurisdiction to review the award on its merits, its function being merely to decide the single question whether the award was within the statutory or constitutional authority of the Board. Their contention is based exclusively upon a provision of Sec. 3(m) of the Act, that the awards of the Board 'shall be final and binding upon both parties to the dispute.'"

\* \* \* \* \*

"If the Act should be interpreted as precluding consideration of the merits by the Court, serious doubts as to its constitutionality would arise. Such interpretation would amount to vesting the Board with full judicial power; and, as was said in a similar but other connection in the dissenting opinion in Washington Terminal Co. v. Boswell, 75 U.S. App.D.C. 1, 124 F.2d 235, 276, 'There can be no valid delegation of governmental power to nongovernmental agencies. Carter v. Carter Coal Co., 1936, 298 U.S. 238, 56 S.Ct. 855, 80

L.Ed. 1160. The Adjustment Board, consisting of bi-partisan groups paid by and set up to represent the employees and carriers respectively, is not a governmental agency.' "

More recently the 4th Circuit considered the question in Brotherhood of Ry. & S. S. Clerks, Freight Handlers, etc. v. Atlantic Coast Line R. Co., (4th Cir.1958), 253 F.2d 753.

"■ Appellant relies for its position upon subsection (m) of the same statute, 45 U.S.C.A. § 153, subd. 1 (m), providing that awards of the Board shall be final and binding upon both parties to the dispute, except in so far as they shall contain a money award. The purpose of this provision, however, was to give binding effect to the awards of the Board, which prior thereto could be given effect only by stipulation of the parties, not to give them the effect of unappealable decisions. To give them such effect would be directly contrary to the express provision of subsection (p), which, as above stated, provides that they shall be merely prima facie evidence."

See also Joint Council Dining Car Employees v. Delaware, L. & W. R. Co. (2nd Cir.1946), 157 F.2d 417; Kirby v. Pennsylvania R. Co. (3rd Cir.1951), 188 F.2d 793; Atlantic Coast Line R. Co. v. Brotherhood, etc. (4th Cir.1954), 210 F. 2d 812; Railway Express Agency v. Order of Railroad Telegraphers (5th Cir. 1943), 137 F.2d 46; Ward v. New Orleans Public Belt Railroad (5th Cir. 1952), 195 F.2d 829; Brotherhood, etc. v. Railway Express Agency (6th Cir. 1956), 238 F.2d 181; Brotherhood of Sleeping Car Porters v. Pullman Co. (6th Cir.1952), 200 F.2d 160; Boos v. Railway Express Agency (8th Cir.1957), 253 F.2d 896; Callan v. Great Northern Railway Co. (9th Cir.1961), 299 F.2d 908.

The petitioner relies heavily on the recent case of Brotherhood of Locomotive Engineers v. Louisville & Nashville Railroad Co. (1963), 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172. That case is clear-

ly distinguishable from the case under consideration. It is true that the NRAB sustained the claim of the employee for reinstatement with pay for lost time, without deduction for outside income. A dispute arose between the employee and the Railroad with reference to the matter of deduction for outside income and the Railroad submitted that dispute to the Board. The union then set a definite strike deadline, whereupon the employer brought suit in the District Court of Kentucky requesting injunctive relief against the threatened strike. The Board refused to clarify its award and the District Court issued an injunction holding that the union could not legally strike for the purpose of enforcing its interpretation of the Board's order, and concluded that the union must utilize the judicial enforcement procedure provided by subsection (p). The Court of Appeals for the 6th Circuit affirmed the judgment. The Supreme Court affirmed the Court of Appeals and held that the District Court was correct in its conclusion. The Supreme Court decision in the L & N case holds that a strike is not the proper means of enforcing an order of the Board, and that the parties must come to court to seek enforcement. That opinion does not reach the question we have for decision here, that is, what to do after the case gets into court on a petition seeking enforcement of an NRAB award. The Court expressly stated that it was not dealing with non-money awards, which are made "final and binding" by subsection (m), and expressly concluded that it was dealing with the "time lost" award, an issue entirely different and separable from the merits of the wrongful discharge issue. It is persuasive to note that the Court thoroughly considered the Boswell case and cited it twice with approval.

The ultimate question involved is the meaning of the phrase "final and binding" as used in subsection (m). Boswell, Dahlberg, Hodges, Brotherhood v. A. C. L., and numerous other cases herein cited,

hold that it does not mean that non-money awards of the Board cannot be reviewed by the courts on a petition seeking enforcement. As succinctly stated in Dahlberg and affirmed in Brotherhood v. A. C. L.:

"The reason for the choice of the words 'final and binding' will appear from the history of legislation providing for mediation of railway labor disputes. Under both the Act of May 20, 1926, 45 U.S.C.A. § 151 et seq. and the Transportation Act of 1920, 41 Stat. 456, as well as the system of labor mediation which was created during the first world war when the railroads were under federal control, the boards had advisory powers only. See Pennsylvania R. Co. v. United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536. Under the Act of 1926 their awards could be given some practical effect, but only by stipulation. These provisions were not entirely successful and it is plain that the words in question adopted by the framers of the Act of 1934 make the decisions of the Board more efficacious than mere private advice. In this, however, there cannot be found an intention to invest them with the force of unappealable judicial decisions."

■■ Having concluded that the District Court had the right to consider and review the non-money award of the NRAB,[5] we must consider the reasons given by the District Court for its refusal to enforce it. Nothing said by the Trial Court limits the right of an employee to present his complaint to the Board, or his free and unfettered right to sue in the state courts under the Federal Employers' Liability Act without recriminatory reprisals. The Trial Court did conclude that when an employee alleges and successfully proves in such a suit that he is permanently injured and disabled, rendering him unable in the future to perform the work of a switchman, or to do

5. See note 4, supra.

other manual labor, and is compensated for lost wages "past, present and future" and the railroad company pays the full judgment pursuant to such a lawsuit, the railroad is not bound as a matter of law to retain the employee in its services with back pay. The Court grounded its decision on collateral estoppel. In our opinion the reasoning of the Trial Court is sound from a moral and a legal point of view in the circumstances of this case. Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578; Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, affirming, D.C.Pa., 107 F.Supp. 622; Wallace v. Southern Pacific R. Co., D.C., 106 F.Supp. 742; Buberl v. Southern Pacific R. Co., D.C., 94 F.Supp. 11; Ellerd v. Southern Pacific R. Co., et al., D.C., 191 F.Supp. 716, Restatement, Judgments, §§ 45 & 68 (1942), 19 Am. Jur. § 74, page 712.

The judgment is affirmed.