Mary **MUELLNER**, Plaintiff,

v.

**MARS, INCORPORATED**, Defendant.

No. 88 C 5242.

United States District Court, N.D. Illinois, E.D.

May 5, 1989.

---

James M. Ansbro, Ltd., Chicago, Ill., for plaintiff.

P. Kevin Connelly, Michael J. Sheehan, Lederer, Reich, Sheldon & Connelly, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is defendant's, Mars, Incorporated, motion for summary judgment, pursuant to Fed.R.Civ.P. 56(b), on all counts of plaintiff's, Mary Muellner, five count complaint alleging retaliatory discharge, breach of contract, age discrimination, intentional infliction of emotional distress, and negligent misrepresentation. For the following reasons, Count III is dismissed and summary judgment is entered in favor of Mars and against Muellner on Counts I, IV and V, and on part of Count II.

## FACTS

The following facts are necessary to understand the context in which Muellner brings her claims. In October, 1942, Mars hired Muellner to work at a Mars' factory in Chicago, Illinois. In August, 1984, Muellner injured her hand on the job. On September 4, 1984, Muellner was placed on short term disability at 100% of her base pay. On January 7, 1985, Muellner's disability payments were reduced to 75% of her base pay. On March 2, 1985, Mars placed Muellner on long-term disability at 60% of her base pay. According to Mars, the shift from short to long-term disability and the reductions in benefits were pursuant to its contract with its disability insurer. At the time Mars placed Muellner on long-term disability, both Mars and Mars' insurer advised her to apply for social security disability benefits.

On April 9, 1985, Muellner applied for disability benefits from the Social Security Administration ("SSA"). Muellner submitted a Disability Report to the SSA in which she answered numerous questions regarding her alleged disability and entitlement to benefits. Specifically, she was asked to "[b]riefly explain the injury or illness which stops ... [her] ... from working." Muellner responded: "major depression and anxiety about stealing things which I don't have any use for. angina, arthritis, high blood pressure." Muellner further stated that her "condition" first bothered her on September 2, 1982 and finally caused her to stop working on September 1, 1984. Finally, Muellner, in explaining how her condition kept her from working, stated "I suffer from extreme anxiety and I constantly worries [sic] and question people about taking things."

The Disability Report informed Muellner that the information she provided would be used in making a decision on her claim. More importantly, Muellner signed the Disability Report directly beneath the following warning: "knowing that anyone making a false statement or representation of a material fact for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law, I certify that the above statements are true."

Also in April 1985, apparently in connection with Muellner's application for continued long term disability payments from Mars' insurer, Dr. Susnil Bagri opined that "at present Ms. Muellner is totally disabled."

Muellner was successful in applying for social security disability benefits and re-

ceives them to this day. (Muellner Dep. at 19.) According to company policy, Muellner was terminated on March 2, 1987, after having been on long-term disability for two years. At that time, Mars informed Muellner that under the terms of its contract with its insurer, despite her termination, she would continue to receive benefits "until such time as you recover, retire, die, or reach age 65, whichever comes first." On May 31, 1987, Mars stopped Muellner's long-term disability benefits. Mars asserts that the benefits were discontinued because Muellner refused to provide information confirming that she remained disabled.

Muellner claims, among other things, that she was not disabled either at the time she was placed on disability leave or at the time she applied for social security disability benefits and is not now disabled. (Muellner Dep. at 121–24). Muellner further claims that she was placed on disability leave because she refused to accept early retirement. However, Muellner has proffered no evidence that she objected to being placed on disability leave until after her disability benefits expired. Since September 1984, Muellner has not obtained nor even sought other employment. (Muellner Dep. at 12).

## DISCUSSION

The pleadings in this matter are like ships that fail even to pass each other in the night. Mars contends that Muellner should be judicially estopped from contradicting her prior statements that she was disabled and unable to work and that therefore Muellner cannot create a genuine issue over the material fact of her ability to work during the period relevant to this action. Consequently, Mars urges that it is entitled to judgment as a matter of law on all five counts. According to Mars, a prerequisite to Muellner's ability to recover on each count, including a count for breach of contract to pay disability benefits, is her ability to work. Mars supports its motion with selected excerpts from Muellner's deposition, the Disability Report and certain correspondence.

Muellner responds that the doctrine of judicial estoppel is inapplicable because there has not been a prior judicial proceeding. Muellner further asserts that the deposition excerpts present Muellner's statements out of context. Yet, Muellner does not supplement them. Nor does she submit even an affidavit, preferring to rely on the allegations of her unverified complaint, representations of counsel and certain documents and correspondence which are not responsive to the matter at hand.

Mars replies that, as evolved, the doctrine of judicial estoppel may properly be applied where the prior position was taken in an administrative proceeding. Mars further asserts that, even if the doctrine of judicial estoppel is inapplicable, summary judgment is still appropriate, as Muellner cannot create genuine issues necessary to avoid summary judgment by merely contradicting her prior statements in the Disability Report. Mars also cites for the first time in its reply, as grounds for summary judgment, or more properly dismissal, arguments previously asserted only as defenses in its answer: namely, that Count III, alleging age discrimination, is barred by Muellner's failure to exhaust remedies pursuant to the Illinois Human Rights Act; that Count IV, alleging intentional infliction of emotional distress, is barred by the exclusivity of the Illinois Workers' Compensation Act; and that Count V, alleging negligent representation of employee benefits, is preempted by ERISA.

## COUNT III IS DISMISSED

In its reply, Mars raises certain arguments for the first time as grounds for dismissal of Counts III, IV and V. Mars' Reply p. 4 n. 3. The court uses the word "arguments" loosely, as Mars merely cites a total of three cases in a single footnote without further elucidation. Muellner has not responded to these arguments.

All arguments in favor of a motion should be incorporated in the initial memorandum supporting the motion so that the opposing party may address all arguments in its response. This ensures orderly and efficient briefing. On one hand, the court,

by considering the arguments belatedly advanced, does not wish to encourage the type of disorganized pleading engaged in by Mars. On the other hand, a substantial period of time has elapsed since Mars filed its Reply without Muellner seeking leave to respond to the additional arguments.

■ The court will address the argument advanced by Mars with respect to Count III. Count III, alleging age discrimination, is dismissed for failure to comply with the Illinois Human Rights Act ("IHRA"). Ill. Rev.Stat. ch. 68, ¶ 1–101 *et seq.* (1987). The IHRA, which creates both a comprehensive scheme of remedies for human rights violations, among them age discrimination, and an administrative agency to investigate and adjudicate allegations of such violations, precludes Muellner's direct access to the courts. As Muellner has failed to assert compliance with the IHRA, her claim is dismissed. *See Mein v. Masonite Corp.,* 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985). This is a clearly settled question of law, which does not require any additional argument or facts.

However, as to Mars arguments with respect to dismissal of Counts IV and V, they are rejected. Ours is an adversarial system. Without briefing on these issues by the parties to illuminate the pertinent facts and the law the court cannot give them proper consideration. However, for other reasons set forth below, the court grants summary judgment in Mars' favor on these counts.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

In addition to the requirements of Rule 56, the parties must comply with Local General Rule 12. Mars has complied with Local General Rule 12 by submitting a separate, appropriately captioned, statement of material facts as to which Mars contends there is no genuine issue and upon which Mars contends it is entitled to judgment as a matter of law. Specific references are made to the material relied upon to support its assertion as to each material fact. *See Abrams v. City of Chicago,* 635 F.Supp. 169, 171–72 (N.D.Ill. 1986). Muellner, on the other hand, has failed to comply with the dictates of Local General Rule 12. Rather than submit a separate statement identifying those material facts over which a genuine dispute exists, with citations to supporting documentation, Muellner has submitted a long rendition of facts, with minimal citation to supporting documentation, containing interpretation, inference and argument. As noted above, Muellner relies largely on the allegations in her unverified complaint and arguments of counsel. Consequently, Mars' statement of material facts is taken as admitted by Muellner. *See* Local General Rule (12)(f) (which applied when this motion was filed); *Abrams,* 635 F.Supp. at 172.

Mars identifies the following four facts as establishing its entitlement to judgment as a matter of law on all counts:

1. Plaintiff, Mary Muellner, was employed by defendant, Mars, Inc., from October, 1942 to March, 1987. (Complaint at ¶ 1).
2. On September 1, 1984 Mars placed defendant on disability leave. (Muellner dep. at p. 99).
3. Plaintiff applied for and received disability benefits from the Social Security Administration based on her representation that she was disabled. (Ex. 2 to Mar's motion).
4. Plaintiff continues to receive Social Security disability benefits. (Muellner dep. at p. 19).

It does not necessarily follow from these facts that Muellner remained disabled or that her disability prevented or continues to prevent her from performing the duties of her employment at Mars. But, judicial estoppel forms the crux of Mars' defense and it is against the backdrop of these admissions that the court considers Mars' motion for summary judgment.

## JUDICIAL ESTOPPEL

The common law doctrine of judicial estoppel "precludes parties from abandoning positions taken in earlier litigation." *Eagle Foundation, Inc. v. Dole*, 813 F.2d 798, 810 (7th Cir.1987). While not all circuits and jurisdictions have embraced the doctrine, and even in those that have its elements differ, *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987); *Allen v. Zurich Ins. Corp.*, 667 F.2d 1162, 1166 (4th Cir.1982), it essentially prevents a party who has successfully maintained a position in one proceeding from asserting the contrary in another proceeding. *See Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988); *FDIC v. Jones*, 846 F.2d 221, 235 (4th Cir.1988).

Among the cases most influential in the development of the doctrine of judicial estoppel are those involving the very situation confronting the court: an individual claims disability, through either judicial or quasi-judicial proceedings obtains a single payment or continuing disability benefits, and then seeks reinstatement to his job. Illustrative is *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510 (3d Cir.1953), in which Scarano sued under the Federal Employers Liability Act claiming that he was "totally incapacitated from resuming his former occupation or from engaging in any other form of labor" due to a fall from a locomotive. After the jury returned a verdict in favor of Scarano, the railroad moved for a new trial. But, before the trial court could rule on this motion, Scarano and the railroad reached a settlement of $27,750.00 and judgment was entered in accordance with the settlement.

Less than a month later Scarano sought reinstatement, claiming he was capable of performing his job. The railroad refused to reinstate him and Scarano brought an action for breach of a collective bargaining agreement requiring the railroad to reinstate an employee injured on the job as soon as he is capable of working. The railroad sought summary judgment, claiming that, as the settlement was based on Scarano's claims of total and permanent disability from doing railroad work, he was estopped to assert otherwise. 203 F.2d at 511–12. Scarano retorted that the earlier proceeding was not dispositive and that the only issue was his ability to work on the date he sought reinstatement. 203 F.2d at 512. The trial court estopped Scarano from claiming that he was able to perform his job at the time he sought reinstatment and, as that was an essential element of his claim, entered summary judgment for the railroad. *Id.*

The Third Circuit affirmed based upon what is now called "judicial estoppel." The court reasoned that, given Scarano's limited earning power, the settlement was designed to compensate him for "a substantial future period." To seek reinstatement as well as additional compensation, less then a month later was "playing fast and loose with the courts" by using inconsistent positions to obtain unfair advantage. 203 F.2d at 513–14. The *Scarano* court concluded that one "who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim

inconsistent with his earlier contention." 203 F.2d at 513; *accord Jones v. Central of Georgia Railway Company*, 331 F.2d 649, 654–55 (5th Cir.1964) (employee who obtained judgment based on prior position of permanent disability was estopped from denying disability three years later); *Ellerd v. Southern Pacific R. Co.*, 191 F.Supp. 716, 721–22 (N.D.Ill.1961) (employee estopped from denying disability two months after representation of disability).

■ Though similar to equitable estoppel, the function of judicial estoppel is to protect the integrity of the judicial process. *Konstantinidis v. Chen*, 626 F.2d 933, 937 (D.C.Cir.1980). Consequently, the doctrine's application has traditionally been restricted to instances where the proceedings are judicial in nature. *See Consolidated Television Cable Service, Inc. v. City of Frankfort*, 857 F.2d 354, 359 n. 4 (6th Cir.1988); *Brandon*, 858 F.2d at 268; *United States v. Siegal*, 472 F.Supp. 440, 442 n. 4 (N.D.Ill.1979) (addressing application of doctrine against U.S.).

■ In order to have successfully maintained a prior position the party to be estopped must have prevailed in the prior proceeding on that issue, though not necessarily on the merits. *See Water Technologies Corp. v. Calco Ltd.*, 850 F.2d 660, 665–666 (Fed.Cir.1988); *Consolidated Television*, 857 F.2d at 359 n. 4; *R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.*, 835 F.2d 1306, 1307 n. 2 (10th Cir. 1987). Thus, courts have refused to apply judicial estoppel where the prior proceeding ended in a settlement, which they reason does not imply any judicial acceptance of the prior position. *See Water Technologies Corp.*, 850 F.2d at 666; *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 598–600 (6th Cir.1982); *Konstantinidis*, 626 F.2d at 939. The rationale is that the perception that either the first or second court is misled is absent, thereby leaving the integrity of the judicial process unaffected. *See Edwards*, 690 F.2d at 599; *Water Technologies*, 850 F.2d at 666. This development is somewhat ironic in that *Scarano*, a seminal case in the development of judicial estoppel, involved a prior position taken in a proceeding which was settled, albeit after a verdict in favor of the estopped party.

Because the purpose of judicial estoppel is to prevent a party from "playing fast and loose with the courts," *Allen*, 667 F.2d at 1166, rather than to protect litigants, under the prevalent view there generally is no need to demonstrate detrimental reliance or privity of the adverse party. *See, e.g., Patriot Cinemas*, 834 F.2d at 214; *Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737, n. 6 (8th Cir.1987); *Edwards*, 690 F.2d at 598; *Konstantinidis*, 626 F.2d at 933; *cf. Colonial Refrigerated Transp. Inc. v. Mitchell*, 403 F.2d 541, 550 (5th Cir.1968) (applying a stricter version of judicial estoppel requiring privity and reliance); *see generally* C. Wright & A. Miller, *Federal Practice and Procedure* § 4477 (reviewing differing versions of judicial estoppel).

Mars invokes Illinois' law on judicial estoppel. Whether federal or state judicial estoppel law applies in diversity cases differs from circuit to circuit. *See Patriot Cinemas*, 834 F.2d at 215. The Seventh Circuit has recognized and applied the doctrine without precisely identifying its elements or specifying whether federal or state law applies. *See, e.g., Eagle Foundation*, 813 F.2d 798; *Sec. of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986); *Himel v. Continental Ill. National Bank & Trust*, 596 F.2d 205 (7th Cir.1979); *In re Yarn Processing Patent Validity Litigation*, 498 F.2d 271, 179 (7th Cir.1974). Courts applying federal law justify doing so with its relation to "protection of the federal judicial process." *Allen*, 667 F.2d at 1167 n. 4. Yet, the majority of courts appear to rely upon state law. Even courts apparently applying federal law generously rely on state law for guidance. Consequently, the court will apply Illinois judicial estoppel law which is well developed and provides the most guidance in resolving this matter.

A doctrine widely recognized by Illinois courts, *see Giannini v. First Nat'l Bank of Des Plaines*, 136 Ill.App.3d 971, 983–84, 91 Ill.Dec. 438, 449, 483 N.E.2d 924, 935

(1st Dist.1985); *DeWitt County Public Building Commission v. The County of DeWitt,* 128 Ill.App.3d 11, 15, 83 Ill.Dec. 82, 92, 469 N.E.2d 689, 699 (4th Dist.1984); *Goldstein v. Scott,* 108 Ill.App.3d 867, 871–72, 64 Ill.Dec. 374, 378, 439 N.E.2d 1039, 1043 (1st Dist.1982); *Finley v. Kesling,* 105 Ill.App.3d 1, 8–10, 60 Ill.Dec. 874, 880–81, 433 N.E.2d 1112, 1118–19 (1st Dist.1982); *Hild v. Avland Development Co.,* 46 Ill. App.3d 173, 181, 4 Ill.Dec. 672, 675, 360 N.E.2d 785, 792 (3d Dist.1977), judicial estoppel has evolved such that it has five elements.

(1) The two positions must be taken by the same party; (2) the positions must be taken in judicial or quasi-judicial administrative proceedings; (3) the records of the two proceedings must clearly reflect that the party to be estopped intended the triers of fact to accept the truth of the facts alleged in support of the positions; (4) the party taking the positions must have been successful in maintaining the first position and must have received some benefit thereby in the first proceeding; (5) the two positions must be totally inconsistent.

*Dept. of Transp. v. Grawe,* 113 Ill.App.3d 336, 341–42, 69 Ill.Dec. 250, 254, 447 N.E. 2d 467, 471 (4th Dist.1983); *citing Dept. of Transp. v. Coe,* 112 Ill.App.3d 506, 510–11, 68 Ill.Dec. 58, 60, 445 N.E.2d 506, 508 (4th Dist.1983).

In *Coe,* a Department of Transportation employee, on leave of absence due to an on-the-job injury, submitted to the Department, in conjunction with his worker's compensation claim, a physician's letter stating that he "was entitled to 20% permanent partial disability to the body as a whole." The physician further stated that Coe could no longer perform the work his job required—constant bending, stooping, heavy lifting or working with heavy machinery. Consequently, the Department informed Coe that there was no possibility of his returning to his job and entered into a lump sum settlement agreement of Coe's worker's compensation claim which was subsequently approved by the Industrial Commission. The Department then informed Coe that, as his leave of absence was expiring and as he was permanently disabled and unable to perform his job, he would have to resign or be discharged. Coe refused to resign and sought to set aside the settlement agreement. Eventually, the Department initiated discharge proceedings against Coe. At a Civil Service Commission hearing contesting his discharge, Coe prevailed by alleging, despite his earlier representations, that he was now 100% capable of performing his job. *Coe,* 112 Ill. App.3d at 509, 68 Ill.Dec. at 59, 445 N.E.2d at 507.

The trial court reversed, applying judicial estoppel to preclude Coe from denying his disability. The Illinois Appellate Court affirmed and, in the course of doing so, modified the elements of judicial estoppel which previously had been applied only where both positions were taken in judicial proceedings and under oath. *See e.g., Garden City Sand Co. v. Christley,* 289 Ill. 617, 124 N.E. 729 (1919); *Goldstein,* 108 Ill. App.3d 867, 64 Ill.Dec. 374, 439 N.E.2d 1039.

The *Coe* court saw no reason to distinguish between judicial and quasi-judicial proceedings in the application of the doctrine. Administrative agencies need "to ascertain the truth of the parties' positions in order to resolve ... dispute[s]. The truth is no less important to an administrative body acting in a quasi-judicial capacity than it is to a court of law." *Coe,* 112 Ill.App.3d at 510, 68 Ill.Dec. at 60, 445 N.E.2d at 508. Therefore, the *Coe* court concluded that "the purposes behind the application of the doctrine are carried out equally by applying the doctrine in both types of proceedings." *Id.*

Concerning the requirement that the positions be taken under oath, the *Coe* court concluded that "it would frustrate the purposes behind the doctrine to limit its application to those positions." *Id.* The *Coe* court reasoned that the application of judicial estoppel in administrative proceedings necessitated eliminating the formal oath requirement, as "administrative agencies today handle an enormous volume of proceedings and not all of these proceedings are conducted under formal oath." *Id.*

This reasoning was further supported by the recognition that

> Often, disputes that arise in administrative proceedings find their way through administrative review to courts of law. It would be totally illogical to allow parties to take one position in an agency proceeding and then allow them to take an inconsistent position in subsequent court proceedings simply because the first position was not taken under formal oath.

*Id.* In lieu of an oath, the *Coe* court required that "the record clearly reflect the party intended the trier of fact to accept the truth of the party's position." *Id.* The court concluded that in "signing the settlement agreement representing that he was 20% permanently disabled, Coe clearly intended the Industrial Commission accept the truth of that position in deciding whether to approve the agreement." *Id.; accord Konstantinidis; Scarano; see also Grawe,* 113 Ill.App.3d at 341–42, 69 Ill.Dec. at 254, 447 N.E.2d at 471 (court considered applying judicial estoppel as modified by *Coe,* but where employee never explicitly represented permanent disability due to heart attack, though Industrial Commission arbitrator so found in award statement, employee was not estopped to claim ability to work).

The reasoning in *Coe* is sound and consistent both with the doctrine's purposes of promoting truth and preventing parties from "deliberately shifting positions to suit the exigencies of the moment," *Coe,* 112 Ill.App.3d at 510, 68 Ill.Dec. at 60, 445 N.E.2d at 508, and with the increasing importance of administrative proceedings in resolving disputes and adjudicating rights. Consequently, the court believes the Illinois Supreme Court would follow *Coe.* See *Dellcar v. Hicks,* 685 F.Supp. 679, 681 (N.D.Ill.1988).

All elements necessary for the application of judicial estoppel, as announced in *Coe* and *Grawe,* are present here. Both positions were taken by Muellner. The first position was taken in an admnistrative proceeding before the SSA. Muellner's application for disability benefits amounted to the first step in an administrative proceeding which was quasi-judicial in nature, much like the workmen's compensation claim in *Coe,* though less adversarial. That Muellner was immediately successful at obtaining disability benefits and did not have to proceed to an actual hearing in order to prevail ultimately does not alter the essential character of the procedure involved in applying for disability benefits. The SSA administrator's decision to pay disability benefits as sought by Muellner in her claim amounts to a quasi-judicial endorsement of Muellner's prior position of disability. *But see Edwards,* 690 F.2d at 600. Muellner misstates Illinois law when she asserts that *Grawe* requires the prior position be taken in a judicial proceeding.

The Disability Report, which contained numerous representations that Muellner was disabled, was not signed under oath, but was signed by Muellner with full knowledge of the penalties which would result from misrepresentation. Muellner clearly intended that the SSA accept as true her representation that she was disabled and unable to perform the duties of her job at Mars. Muellner was successful in maintaining her first position. She was awarded and continues to receive social security disability payments. (Muellner Dep. at 19).

The second position was taken before a court. It is contained in Muellner's complaint and in her deposition taken under oath.

Finally, Muellner's second position, that she is not currently disabled and has not been disabled anytime after November 1984, is totally inconsistent with the position she took before the SSA. In her deposition, when questioned about the discrepancy between her first and second positions, Muellner provided numerous explanations. She denies that she ever represented that she was "totally disabled." ("I didn't say totally disabled. I never mentioned that." Muellner Dep. at 131). However, in the Disability Report Muellner represented that she had disabling conditions, that the conditions stopped her from working and that the conditions keep her from

working. That she never used the term "totally disabled" is of no consequence. Total disability is a necessary inference from the numerous ailments and consequences she recites. Moreover, even if Muellner never represented that she was "totally disabled," she did represent that she was unable to perform the duties of her job at Mars, the very job to which she seeks reinstatement in her lawsuit, in addition to other relief. Thus, Muellner's conduct is similar to that in *Coe* and distinguishable from that in *Grawe*, where the party sought to be estopped never affirmatively represented disability.

Muellner further explains that she applied for disability benefits at the request of Mars. Mars acknowledges that, in conjunction with Muellner's application for disability benefits from Mars' insurer, Mars' and its insurer informed Muellner that if she had not already done so she should apply for Social Security Disability benefits. They did so because any social security disability benefits Muellner received would be set off against her disability insurance payments. The request of Mars' and its insurer that Muellner apply for disability benefits from the SSA, being based on the assumption that Muellner's acceptance of disability benefits from Mars was done in good faith, was perfectly reasonable and was apparently routine. At the time Muellner was placed on disability she did not protest. If Muellner was not disabled she never should have applied for social security disability benefits and she should have contested Mars placing her on disability leave. Certainly, Muellner cannot blame Mars for what appears to be her fraud on the SSA. Judicial estoppel might not have been applicable if Muellner, in opposing Mars motion for summary judgment, had come forward with more than her mere assertion, unaccompanied by even an affidavit, of misconduct on the part of Mars, such as placing Muellner on disability because she refused to accept early retirement and doing so without any intention that she be allowed to return to work. She has failed to do so.

Unlike the plaintiffs in *Scarano* and *Ellerd*, a substantial period of time has elapsed since she represented to the SSA that she was disabled. Yet, Muellner does not claim she has recovered. If she had the court's position might be much different. *See Lawrence v. United States*, 629 F.Supp. 819, 822 (E.D.Pa.1985) (prior position of disability does not preclude claim of ability to perform different job or even same job where a 22 month period elapsed giving rise to possibility of recovery); *but see Jones*, 331 F.2d 649 (estoppel applied though three years had passed). Rather, she denies *ever* being disabled and flaunts the apparent fraud she committed on the SSA, and still commits by her continued acceptance of disability benefits to which she admits she is not entitled. Muellner had a duty to be truthful with the SSA in the Disability Report. She wasn't. The court will not prefer stealth over candor. Muellner's continued receipt of disability benefits does not itself establish that she remained disabled. However, her continued acceptance of disability benefits is a continuing reaffirmation of the representations she made to the SSA in the Disability Report. Muellner's continuing conduct makes judicial estoppel even more applicable than it is in those instances which an employee accepts a lump sum disability payment and then after the passage of time claims recovery.

One instance of candor by Muellner in explaining the Disability Report and her representations contained therein is not lost on the court. While only excerpts of her deposition have been provided, this statement is so extremely provocative that the court cannot possibly foresee what context Muellner could place it in so as to render it harmless. Specifically, she stated under oath, after denying that she was disabled and apparently by way of explanation: "Well, when you go to apply for social security disability, you don't tell them you are feeling like doing the Irish jig." (Muellner Dep. at 131). Now she attempts to dance in this court. To allow her to do so would be to countenance the very intentional self-contradiction and abuse of the courts which judicial estoppel was designed to prevent.

■ Muellner is estopped to deny that she became disabled to the extent that she was unable to perform the duties of her job at Mars on September 1, 1984; that she continued to be so disabled on April 9, 1985 when she applied for Disability Benefits from the SSA; and that, in the period in question from September, 1984 through May, 1987, during which she continued to accept social security disability benefits, she remained so disabled. Or to put it another way, Muellner is estopped to assert that she was able to perform the duties of her job at Mars, a necessary prerequisite to her success on Counts I, IV and V.

### COUNT II SURVIVES

Count II alleges that Mars breached a contract between Muellner and Mars created by Mars' employee's handbook. Under Illinois law, an employee handbook may create contractual rights. *See Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987). In Count II Muellner claims that she "had a legitimate expectation of continued employment and/or long term disability payments until she reached age 65 or retired". However, the only evidence Muellner provides to support this claim is her own paraphrasing of the employee's handbook. She failed to attached a copy of the employee's handbook to her complaint and neither Muellner nor Mars have provided a copy to the court for purposes of this motion. As paraphrased, the employee's handbook only creates an alleged entitlement to long-term disability benefits. Therefore,. accepting for purposes of this motion the accuracy of her paraphrasing, the court must assume that any contract which allegedly exists between Muellner and Mars does not convey a "legitimate expectation of continued employment" upon her.

■ Nevertheless, summary judgment on Count II is inappropriate at this time. Contrary to Mars' assertion, estopping Muellner to deny her earlier representations of disability to perform her job would not preclude her recovery for breach of an alleged contract whereby Mars promised that Muellner would continue to receive long-term disability benefits under certain conditions. In fact, her disability would seem to be a prerequiste to her eligibility for disability benefits. Yet, Muellner is clearly trying to have it both ways. The other counts of her complaint are premised on her lack of disability, while in Count II Muellner claims breach of a contract to pay her disability benefits. Judicial estoppel is inapplicable as to Count II, since her representations denying disability occurred in this proceeding, rather than in a prior one. However, while Muellner is estopped to deny her disability, Mars is not.

Mars claims that Muellner's disability benefits were terminated because she failed to provide the required evidence of her continuing disability. Inexplicably, Mars neglected to include this as an uncontested fact in its Local General Rule 12 statement. It would serve no purpose to return this matter to Mars so that it may designate Muellner's failure to provide evidence of continuing disability and lack of disability as additional undisputed facts. Muellner's deposition establishes that there is no genuine issue of material fact as to her disability. She has stated under oath that she is not and was not disabled. The court will not allow this matter to go forward so that Muellner can contradict herself yet another time in order to prevail on Count II. Muellner stretches even the most liberal theory of alternative pleading beyond its breaking point. Muellner's conduct places the court in the unusual position of ruling, on one hand, that as to Counts I, IV and V Muellner is estopped to deny her earlier representations of disability and, on the other hand, that as to Count II there is no genuine issue as to the material fact that Muellner was and is not disabled. Partial summary judgment is entered in favor of Mars on Count II as to Muellner's ability to work.

As noted, Mars has asserted that Muellner's long-term disability benefits were cancelled because she failed "to provide plan administrators with information confirming her disability." Indeed, the court can conceive of no disability plan providing for disability payments to one who is not disabled. Yet, the court, without examining the plan or handbook, cannot deter-

mine as a matter of law that termination of Muellner's disability benefits was not a breach of any contract between Mars and Muellner. Therefore, Mars has 14 days in which to move for summary judgment as to Count II, in light of the court's granting of partial summary judgment on the issue of Muellner's lack of disability.

## CONCLUSION

Summary judgment is entered in favor of Mars and against Muellner on Count I, alleging retaliatory discharge; Count IV, alleging intentional infliction of emotional distress; and Count V, alleging negligent misrepresentation. With respect to Count III, alleging age discrimination, it is dismissed without prejudice. Muellner has 14 days to file an amended complaint alleging compliance with the IHRA, if she can so allege. In the event Muellner fails to do so within 14 days, the dismissal of Count III will be with prejudice. With respect to Count II, alleging breach of contract, partial summary judgment is entered in favor of Mars and against Muellner as there is no genuine issue as to Muellner's ability to work. Mars has 14 days in which to move for summary judgment as to Count II in its entirety. If Mars so moves, Muellner has 7 days therefrom in which to respond and Mars 7 days therefrom in which to reply.

IT IS SO ORDERED.